IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ERNEST TAYLOR | § | CIVIL ACTION |
| Plaintiff, | § § § | |
| VS. | § § | |
| THE CITY OF BATON ROUGE, ET AL. | § | NO. 13-579-BAJ-RLB |
| Defendants. | § § | |

**PLAINTIFF'S RESPONSE IN SUPPORT OF DEFENDANTS'
MOTION FOR LEAVE TO FILE EXHIBIT CONVENTIONALLY**

**I.      Introduction**

On June 27, 2014, Plaintiff filed a Notice of Facts Related to the Current Proceeding advising the Court that on April 29, 2014, Defendant James Thomas and other members of the Baton Rouge Police Department ("BRPD") traveled to Plaintiff's home and took him into custody. [Doc. 32]. On July 1, 2014, the Court ordered Defendants' to respond to Plaintiff's Notice by July 3, 2014 at 5 p.m. [Doc. 34]. On July 3, 2014, Defendants filed a Response in which they provide an alleged description of the events of April 29, 2014, and argue that the actions of Officer James Thomas and members of the BRPD were entirely above-board, and require no further scrutiny. *See* [Doc. 40] ("Defendants' Response"). The same day, Defendants filed a Motion for Leave to File Exhibit Conventionally, seeking permission to file video footage from April 29, 2014 and a dispatch log into the record. [Doc. 37]. On July 9, 2014, in response to a request from Plaintiff's counsel, counsel for Defendants provided copies of the video and dispatch log that Defendants have sought to file with the Court. For the reasons stated below, Plaintiff requests that the Court grant Defendants' request to submit the videos relating to Mr.

Taylor's arrest on April 29, 2014, but also requests that the Court direct Defendants to provide *all* relevant videos in their entirety, rather than merely chosen portions of only selected relevant videos.

## II. Argument

### A. Defendants' Description of the Events of April 29, 2014 Does Not Comport With the Evidence Provided

In their response to Plaintiff's Notice of Facts, Defendants provide an entirely speculative and conjectural description of the events occurring on the evening of April 29, 2014. Not only are these assertions unsupported by the evidence provided thus far, but Defendants' narrative fails also to address certain blatant inconsistencies between their description of events and the currently available facts.

#### 1. Officer Ardoin's Initial Report Conflicts With Defendants' Description

According to Defendants, the events of April 29, 2014 began with a phone call to 911 at approximately 11:23 p.m. *See* Defendants' Response at 1. The "initial" report authored by Officer J. Ardoin[1], however, indicates that the events of the evening of April 29, 2014, in fact began much earlier in the day – at approximately ***10:11 a.m.*** *See* Baton Rouge Police Department Incident Report ("Incident Report"), [Doc. 40-1] at 3. Officer Ardoin provided the following statements in his initial report:

> On April 29, 2014 at approximately 1011 hrs I Officer J. Ardoin was dispatched to 3818 Alliquippa St. relative to an armed robbery of a residence where the complainant stated that a black male came in her residence armed with a handgun and stole her television.
>
> Upon arrival it was learned that a black male subject had forced his way inside the victims residence armed with a handgun and stole her Emerson Television worth approximately 200.00dollars.

---
[1] In other portions of the incident report, the officer's last name appears as "Ardion."

NOTHING FURTHER.

*Id.*

The above statements from Officer Ardoin conflict with Defendants' representations that the Baton Rouge Police Department ("BRPD") first received a report of a theft at the Alliquippa Street residence at 11:23 p.m. – more than 12 hours after the time indicated in Officer Ardoin's report. Furthermore, there is no mention of Ernest Taylor being identified as a suspect in the robbery, indicating instead only that a "black male" had perpetrated the alleged crime. Similarly, there is absolutely no mention of the presence of Officer James Thomas – Defendant in the present suit – in the description provided by Officer Ardoin. None of the videos Defendants provided to Plaintiff show footage from the morning of April 29, 2014. Instead, the videos begin late in the evening of April 29, 2014.

### 2. The Video from Officer Thomas' Dash-Cam Indicates an Intent to Identify Plaintiff as a Suspect In Spite of Evidence to the Contrary

While Defendants represent that the events of April 29, 2014 began with a 911 call at approximately 11:23 p.m., the video from the dashboard camera of Officer James Thomas ("Thomas") – Defendant herein – begins at 11:27, some four minutes later. In addition, the video has no audio component for approximately the first minute of footage. The audio portion of the video begins at approximately 11:28:20, and the subsequent recording clearly indicates that previous discussion regarding the incident at Alliquipa Street had been ongoing prior to that time. Even so, while there is significant background noise, the very first statement that Thomas makes appears to be "[h]e's trying to sue [inaudible]…"

Thereafter, prior to arriving at the Alliquipa Street residence, Thomas can clearly be heard describing Plaintiff and also clearly indicates his awareness of both this legal action, and

3

the fact that Plaintiff had appeared in Baton Rouge City Court the previous day for charges arising from his initial arrest in October 2012. Among the statements that can be heard are the following:

- "He carries a lot of weapons – he's very violent…"
- "He's an ex-boxer…"
- "I was supposed to go to court on Monday, but I didn't go…"
- "He dresses like an old-school pimp…"
- "Hey Pat, that's the same dude that's trying to sue us and Jeff…"[2]

At one point, another officer can be overheard stating, "So that don't look good on you for your lawsuit, huh? Did you lock him up on those charges?" Thomas responds, "Yup."

At approximately 11:31 p.m. the video shows Thomas arriving at the Alliquipa Street residence. After Thomas' arrival an off-camera conversation can be heard between him and the female individual who purportedly placed the call to 911. Without any indication from the individual that anyone fitting a description of Plaintiff was involved in the incident, Thomas begins asking questions clearly directed towards implicating Plaintiff:

Thomas:   What'd he look like?
Female:   He's a dark-skinned dude…
Thomas:   Kinda dressed like a pimp?
Female:   He got him like a striped shirt…
Thomas:   Does he dress like a pimp dude with a little feathered hat sometimes?
Female:   Yeah… Something like that.

---

[2] Presumably, Thomas was addressing Officer Patrick Wennemann, also a Defendant in this suit.

Later, while still at the Alliquipa Street residence, another officer (assumed to be Officer Ardoin)[3] can be overheard asking, "[i]s that the same dude that has the lawsuit against you?" Thomas can be heard responding, "[m]ight be." (23:36:33). Thomas then indicates that he is going to pull information to see if the individual was in fact Plaintiff. Addressing the female individual Thomas states, "[i]f it's the guy I'm thinking about, I'm going to show you a picture and see if it's him or not, okay?" While Thomas apparently is attempting to locate a picture of Plaintiff, the other officer on the scene can be heard asking the female, "[h]ow old is he?" The female individual responded that the person who had stolen her television was "… in his thirties."[4] Thomas responds, "[t]his probably ain't the same guy then." After more time passes, the female individual can be heard stating, "Yeah…" Thomas can then be heard to state, "[t]hat dude ain't 30," to which the female responded, "[h]e look like him." Later, the female can be heard stating, "[t]hat's him right there…" When asked if she knew the address of the suspect, the female indicated that she did not. The video ends with Thomas stating, "[Y]eah, we can go look for him…" The footage from this portion of Officer Thomas' dash-cam video ends at 11:41:36 p.m.

Another video from Officer Thomas' dash-cam appears on the disc provided to Plaintiff's counsel. According to the video's time-stamp, it begins at 12:03:22 a.m. on April 30, 2012 – more than 20 minutes after the previous video ended. At this time, Officer Thomas has already arrived at Plaintiff's residence, and his vehicle is parked directly behind another police cruiser that is also parked on the street. Shortly after the video begins, four officers can be seen walking towards Thomas' police cruiser from yet another vehicle that is not visible from the angle of

---

[3] Thomas' dashcam indicates the presence of another vehicle, assumed to be Officer Ardoin's police cruiser, parked directly behind Thomas'. No video from Ardoin's dash-cam was provided pursuant to Plaintiff's request.
[4] Plaintiff is 52 years old.

Thomas' dash cam. The officers can be heard knocking on Plaintiff's front door, and when the door is opened one of the officers asks, "[d]id somebody call 911?" As Plaintiff is identifying himself and explaining that he did not call 911, Thomas can be heard to state, "[y]eah, that's him." Next, another officer asks Plaintiff to speak with him, then says, "[t]alk to this officer right here, step back inside." Beginning at approximately 12:06:34 on the video, after Plaintiff indicates there is no one else in the house othe-r than his girlfriend, the following exchange occurs between Thomas and Plaintiff:

| | |
|---|---|
| Plaintiff: | I just got in from work. |
| [Unidentified Officer]: | Did you stop anywhere on your way in from work? |
| Plaintiff: | No, Why? … Why? |
| Thomas: | You know your rights? [Mirandizing] |
| Plaintiff: | First I want to know for what… |
| Thomas: | I'm going to tell you right now, that's why I'm advising you of your rights. You understand your rights? |
| Plaintiff: | Yeah, I understand my rights. |
| Thomas: | Alright. Did you go to, um, to a house on Alliquipa on the way back to the house? |
| Plaintiff: | Nuh-uh, I just came home from work. |
| Thomas: | Are you sure about that? |
| Plaintiff: | Yeah. |
| [Unidentified Officer]: | Is this your truck right here? |
| Plaintiff: | Yeah. |
| Thomas: | So you don't know a Shunta Rose? |
| Plaintiff: | No. |

| | |
|---|---|
| Thomas: | You sure about that? |
| Plaintiff: | Yeah. Isn't it you against me in a lawsuit together? |
| Thomas: | Mmm-hmm. |
| Plaintiff: | Yeah… |
| Thomas: | Alright, put your hands behind your back. |
| Plaintiff: | I want to know for what… |

After further exchanges, at approximately 12:09:09 a.m., Officer Thomas' dash-cam shows his police cruiser moving from its original position, and then parking at a different location a short distance away. In the process of moving the vehicle, the two police cruisers that were parked directly in front of him can be seen, in addition to three additional cruisers which had been parked behind Thomas on the opposite side of the street – making a total of at least 6 BRPD vehicles (including Thomas') present at Plaintiff's residence that evening.[5] At approximately 12:11:10, Plaintiff can be seen being placed into the back of Thomas' police cruiser in a state of undress.

### 3. The Selected Portions of Video Provided by Defendants Do Not Corroborate Their Version of the Facts

Despite Defendants' representation that "Ms. Rose identified the Ernest Taylor, who is the subject of this litigation, as her robber," there is simply nothing in the video provided that indicates this to be true. During the entirety of the discussion between Officer Thomas and Rose, the only information comes from the audio – not the video. Thus, there is nothing to indicate that Ms. Rose identified Plaintiff as the individual who allegedly stole her television. Defendants also misrepresent that Plaintiff was "placed in officer Jermiah Ardion's vehicle" upon being

---

[5] Videos from only two of the vehicles was provided – Officer Thomas' and Officer Brett Delcambre's, both of which begin after the arrival at Plaintiff's residence.

taken into custody, as the video clearly shows him being placed in the back of Thomas' cruiser.

The video further contradicts Defendants' assertion that "[t]here is no evidence to suggest that law enforcement or these officers in general took any special interest in Mr. Taylor." As the video clearly and repeatedly demonstrates, the issues of Mr. Taylor's criminal charges resulting from his previous arrest by Officer Thomas, and the civil claims at issue in this suit, were raised by Thomas and discussed among the officers before any description of the individual who perpetrated the alleged crime on Alliquipa Street on April 29, 2014 had been obtained. Also incriminating is the fact that there existed absolutely no reason or justification for Officer Thomas' entry into Mr. Taylor's home, his questioning and Mirandizing of Mr. Taylor, his placing Mr. Taylor in handcuffs, nor the placement of Mr. Taylor in his police cruiser, when there were numerous other officers present - rendering *any* interaction between Thomas and Plaintiff unnecessary and wholly inappropriate. Defendants' fantastic theoretical musings aside, the current state of knowledge clearly counsels in favor of further investigation into the actions of the BRPD and Officer Thomas in relation to Plaintiff.

## III.  Conclusion

As indicated above, there is considerable evidence of possible impropriety on the part of Officer Thomas and other members of the Baton Rouge Police Department on the evening of April 29th and in the early morning hours of April 30, 2014 which merit further investigation and scrutiny. In order to do so, it will be necessary to have the full picture of the events of that night, and not only those portions hand-selected by Defendants. As a result, Plaintiff respectfully requests that the Court GRANT Defendants' Motion to Submit Exhibit Conventionally, but also requests that the order granting the motion direct Defendants to provide unredacted video from

all relevant cameras during all relevant time periods.

>Respectfully submitted,
>
>s/ Terrence J. Donahue, Jr.
>Christopher D. Glisson #20200
>Terrence J. Donahue, Jr. #32126
>**MCGLYNN, GLISSON, & MOUTON**
>340 Florida Street
>Baton Rouge, Louisiana 70801
>(225) 344-3555

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 9, 2014, after reviewing the videos provided by Defendants, I e-mailed opposing counsel indicating that there appeared to be a substantial amount of video footage relevant to the issue of Plaintiff's arrest on April 29, 2014 that had not been provided -- including an approximately 20 minute gap in footage from Defendant Thomas' dashboard camera. To date, Defendants have provided no response.

>s/ Terrence J. Donahue, Jr.
>Terrence J. Donahue, Jr.

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice has been served on all counsel of record through a Notice of Electronic Filing generated by the Court's CM/ECF system, including those listed below, on this, the 22nd day of July, 2014.

Office of the Parish Attorney
East Baton Rouge Parish
**Attn: Mr. Tedrick Knightshead**
222 Saint Louis Street, Room 902
Baton Rouge, LA 70821

>s/ Terrence J. Donahue, Jr.
>Terrence J. Donahue, Jr.