# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

ERNEST TAYLOR            :
                           :    **CIVIL ACTION NUMBER:**

     **VERSUS**             :
                           :    **3:13-CV-00579 -BAJ-RLB**

**CITY OF BATON ROUGE, ET AL**   :
                           :    **HON.  CHIEF BRIAN A. JACKSON**
                           :
                           :    **JUNE 18, 2014**

## TRANSCRIPT OF MOTION HEARING

==================================================================

### A P P E A R A N C E S:

**FOR THE PLAINTIFF, ERNEST TAYLOR:**
     **TERRANCE J.  DONAHUE, ESQ.**
     **CHRISTOPHER GLISSON, ESQ.**

**FOR CITY OF BATON ROUGE:**
     **TEDRICK KNIGHTSHEAD, ESQ.**

**REPORTED BY:**     **CLARE SMITH-NEELY, CCR**

## UNITED STATES COURTHOUSE
### 777 FLORIDA STREET
### BATON ROUGE, LOUISIANA 70801    (225) 389-3565

1    BY THE COURT: GOOD MORNING EVERYONE.  PLEASE BE

2         SEATED.

3    BY MR. DONAHUE: GOOD MORNING, YOUR HONOR.

4    BY THE COURT: OKAY, LET'S CALL THE CASE.

5    BY THE CLERK: CIVIL ACTION, NUMBER 13-579-BAJ,

6         ERNEST TAYLOR VS. CITY OF BATON ROUGE,

7    ET AL.

8    BY THE COURT: ALL RIGHT, GENTLEMEN.  LET ME

9         REMIND YOU OF THE RULES OF MY COURT.

10   ALL COUNSEL SHALL ADDRESS THE COURT FROM THE

11   FORWARD PODIUM.  LET ME ASK COUNSEL FOR THE

12   PLAINTIFF TO ENTER THEIR APPEARANCES AT THIS

13   TIME.

14   BY MR. DONAHUE: GOOD MORNING, YOUR HONOR, JOE

15        DONAHUE ON BEHALF OF ERNEST TAYLOR.

16   BY THE COURT: MR. DONAHUE.  AND YOU ARE JOINED

17        TODAY BY?

18   BY MR. DONAHUE: MR. CHRIS GLISSON.

19   BY THE COURT: MR. GLISSON.  AND FOR THE

20        DEFENDANTS?

21   BY MR. KNIGHTSHEAD: GOOD MORNING, JUDGE.

22        TEDRICK KNIGHTSHEAD APPEARING ON BEHALF OF

23   THE DEFENDANTS.

24   BY THE COURT: MR. KNIGHTSHEAD.  YOU MAY HAVE A

25        SEAT.  NOW, BEFORE THE COURT ARE FOUR

1     MOTIONS.  THE FIRST WHICH IS FOUND AT RECORD

2     DOCUMENT 22, IS A MOTION BY THE DEFENDANTS TO

3     SET ASIDE THE CLERK'S ENTRY OF DEFAULT

4     JUDGEMENT.  NEXT WE HAVE THE -- A MOTION TO

5     STRIKE DEFENDANTS'S ANSWERS FILED BY PLAINTIFF.

6     AND THAT'S FOUND AT DOCUMENT 24, AT RECORD

7     DOCUMENT 26 IS THE DEFENDANT'S -- EXCUSE ME, THE

8     PLAINTIFF'S MOTION FOR DEFAULT JUDGEMENT. AND

9     FINALLY AT RECORD DOCUMENT 27 WE

10    HAVE THE PLAINTIFF'S MOTION FOR LEAVE TO FILE AN

11    EXHIBIT CONVENTIONALLY.  I BELIEVE THAT'S A

12    VIDEO OF MR. TAYLOR'S ARREST.  IS THAT CORRECT,

13    COUNSEL?

14    BY MR. DONAHUE: YES, YOUR HONOR, THAT'S CORRECT.

15    BY THE COURT: ALL RIGHT.  VERY WELL.  OKAY,

16     LET'S FIRST TAKE UP THE MOTION TO SET ASIDE

17    THE CLERK'S ENTRY OF DEFAULT JUDGEMENT.  MR.

18    KNIGHTSHEAD, LET ME GIVE YOU AN OPPORTUNITY TO

19    BE HEARD ON THIS.  FIRST, LET ME JUST ASSURE

20    BOTH SIDES THAT I HAVE, OF COURSE, READ ALL THE

21    PLEADINGS.  YOU MAY COME FORWARD, MR.

22    KNIGHTSHEAD.

23     NOW, MR.  KNIGHTSHEAD, LET ME JUST TELL

24    YOU, I'M VERY, VERY DISTRESSED ABOUT THE MANNER

25    IN WHICH THIS CASE WAS NOT HANDLED BUT, FRANKLY,

1       GROSS MISHANDLED BY THE CITY ATTORNEY'S OFFICE.

2       AND IT COMES, AS YOU KNOW, MR. KNIGHTSHEAD, AT

3       A PARTICULARLY INOPPORTUNE TIME. IT COMES --

4       THIS HEARING COMES ONE DAY AFTER THE LOCAL

5       NEWSPAPER POINTED OUT THAT THERE ARE ISSUES

6       WITHIN THE CITY ATTORNEY'S OFFICE.  NOW, I WILL

7       TELL YOU, MR. KNIGHTSHEAD, THAT YOU ARE IN THE

8       TENABLE POSITION OF BEING THE RECIPIENT OF

9       MY EXPRESSIONS OF FRUSTRATIONS AND CONCERN HERE.

10      NOT JUST AS A JUDGE IN THIS COURT, CHIEF JUDGE

11      OF THIS COURT, WHERE WE HAVE SEVERAL CASES

12      INVOLVING THE CITY ATTORNEY'S OFFICE.  BUT,

13      FRANKLY AS A TAXPAYER WITHIN THE PARISH OF

14      EAST BATON ROUGE AND THE CITY OF BATON ROUGE.

15          AND, SO, THE MANNER IN WHICH THIS CASE HAS

16      BEEN HANDLED BY THE CITY ATTORNEY'S OFFICE HAS

17      BEEN ABSOLUTELY REPREHENSIBLE. AND THERE IS A

18      LOT OF BLAME TO GO AROUND.  I WILL TELL YOU THAT

19      I AM STRONGLY CONSIDERING ISSUING FOR MS. ROPER

20      TO APPEAR IN MY COURT AS EARLY AS THIS AFTERNOON

21      TO EXPLAIN HERSELF.  TO EXPLAIN HOW THIS COULD

22      HAPPEN.  THERE IS A VERY, VERY SERIOUS

23      CONSTITUTIONAL ISSUE THAT HAS BEEN RAISED BY

24      THE PLAINTIFF HERE.

25          THE PLAINTIFFS HAVE, I THINK, RAISED A

1     VERY SERIOUS AND QUITE LEGITIMATE ISSUE HERE --

2     THE CONSTITUTIONALITY OF THIS ORDINANCE. IT IS

3     NOT, CONTRARY TO THE EXPRESS STATUTORY

4     OBLIGATIONS OF THE CITY ATTORNEY'S OFFICE, HAS

5     NOT BEEN VIGOROUSLY DEFENDED AT ALL BY THE

6     CITY ATTORNEY'S OFFICE.  SO, AGAIN, MR.

7     KNIGHTSHEAD, I KNOW THAT YOU CAME INTO THIS

8     LATE.  LET ME JUST TELL YOU FIRST OF ALL, THAT

9     MR. HILBURN WILL HAVE TO CALL FOR -- WILL BE

10    ACCOUNTABLE FOR HIS ACTIONS.  BECAUSE ONE OF THE

11    THINGS THAT I AM CONSIDERING IS NOT ONLY AN

12    ORDER TO SHOW CAUSE AGAINST ALL PERSONS,

13    INCLUDING YOURSELF, MR. KNIGHTSHEAD, WHO

14    FAILED TO ABIDE BY MY -- FIRST OF ALL, NOT EVEN

15    MY ORDER NECESSARILY BUT THE RULES, THE FEDERAL

16    RULES OF CIVIL PROCEDURE.  I MEAN, AS I

17    DISCUSSED WITH MY LAW CLERK, EVERY LAWYER WHO

18    PRACTICES IN STATE OR FEDERAL COURT AT SOME

19    POINT MISSES A DEADLINE.  IT'S GOING TO HAPPEN

20    IF YOU PRACTICE LAW FOR ANY LENGTH OF TIME.  BUT

21    USUALLY YOU REALIZE IT A DAY OR TWO AFTER THE

22    DEADLINE, NOT FIVE AND A HALF MONTHS AFTER THE

23    DEADLINE.  AND WHEN YOU REALIZE WHAT IS

24    HAPPENING, THE FIRST THING YOU DO IS YOU CONTACT

25    YOUR OPPONENT AND YOU SAY, I MESSED UP.  YOU

1    FILE LEAVE OF COURT, WHICH WAS NOT DONE HERE.

2    AS FAR AS I KNOW YOU DIDN'T CONTACT YOUR

3    OPPONENT. YOU FILED YOUR MOTION. AND I

4    REALIZE THAT, YOU KNOW, THE MOTION WAS FILED.

5    YOU KNOW, A MONTH -- COMPARED TO MR. HILBURN,

6    MR. HILBURN HAD THIS CASE MUCH LONGER THAN YOU

7    HAD IT.

8         BUT BEFORE WE GET ANY FURTHER OR PROCEED

9    ANY FURTHER, MR. KNIGHTSHEAD, LET ME GIVE YOU

10   AN OPPORTUNITY TO RESPOND TO MY VERY DEEP

11   FRUSTRATIONS ABOUT THE MANNER IN WHICH THIS CASE

12   HAS BEEN HANDLED.

13   BY MR. KNIGHTSHEAD: AND JUDGE, MAY IT PLEASE THE

14        COURT. I HAVE GONE THROUGH THE RECORD; I

15   HAVE REVIEWED IT. AS A CAVEAT, WHEN THE SUIT WAS

16   FILED I THINK IT WAS A CRIMINAL MATTER PENDING

17   AGAINST MR. TAYLOR. I THINK THE PLEADINGS ARE

18   VERY CLEAR ABOUT THAT. NOW, WHY A STAY WASN'T

19   FILED TO PREVENT ANY MATTER, AS FAR AS THIS

20   COURT WAS CONCERNED FROM GOING FORWARD UNTIL

21   THE CONCLUSION OF THAT CRIMINAL MATTER IS

22   CONCERNED, I CAN'T ANSWER THAT.

23        IT APPEARS THAT MR. HILBURN ---

24   BY THE COURT: A STAY MAY HAVE BEEN REQUESTED

25        BUT I MEAN, I DON'T KNOW IF THERE IS ANY

1   JUSTIFICATION FOR A STAY IN THIS CASE.  THIS IS

2   A FEDERAL MATTER.  A FEDERAL CONSTITUTIONAL

3   CHALLENGE.  I UNDERSTAND, BASED UPON AN

4   ARREST, AN ALLEGED UNLAWFUL ARREST, BUT THAT'S,

5   IN MY JUDGEMENT, A RED HERRING.  THAT'S NEITHER

6   HERE NOR THERE.

7   BY MR. KNIGHTSHEAD: YES, SIR, BUT IN ALL, IN ---

8       IN -- IT KIND OF PUT THE CITY IN A POSITION

9   AS FAR AS LITIGATING THE CASE WHERE THERE MAY

10  HAVE -- THE INFORMATION THAT COULD HAVE BEEN

11  DISCLOSED, THAT BECAUSE OF THE CRIMINAL

12  INVESTIGATION, OR BECAUSE OF THE CRIMINAL CASE

13  THAT IS PENDING.

14  BY THE COURT: I UNDERSTAND THAT.  LET ME TELL

15      YOU SOMETHING, MR. KNIGHTSHEAD, BEFORE YOU

16  GO ANY FURTHER.

17  BY MR. KNIGHTSHEAD: YES, SIR.

18  BY THE COURT: I SPENT 16 AND A HALF YEARS WITH

19      THE JUSTICE DEPARTMENT.

20  BY MR. KNIGHTSHEAD: YES, SIR.

21  BY THE COURT: AND THERE WERE TIMES WHEN THERE

22      WERE FORMAL, DUAL PROSECUTION PROCEEDINGS.

23  BY MR. KNIGHTSHEAD: YES, SIR.

24  BY THE COURT: MEANING THAT THERE WERE CIVIL AT

25      THE SAME TIME THAT THERE WAS A CRIMINAL

1    PROCEEDING.  BUT, THERE ARE WAYS TO DEAL WITH

2    THAT.  BUT, THE ONE WAY WE KNOW WE CAN'T DEAL

3    WITH IT IS TO SIMPLY IGNORE THE FEDERAL RULES

4    OF CIVIL PROCEDURE.

5    BY MR. KNIGHTSHEAD: AND I MAKE NO EXCUSE ABOUT

6         THAT.

7    BY THE COURT: YES.  SO, WHILE, YES,

8         THEORETICALLY, TURNING THE CLOCK BACK,

9    MAYBE SOMEONE, MR. HILBURN, SPECIFICALLY, SINCE

10   HE WAS THE ATTORNEY -- ASSISTANT CITY ATTORNEY

11   CHARGED WITH DEFENDING THE CASE.  SHOULD MR.

12   HILBURN HAVE COME TO COURT AND SEEKING A STAY OF

13   ALL THESE PROCEEDINGS UNTIL SUCH TIME THAT THE

14   ATTORNEY GENERAL'S OFFICE, WHO I UNDERSTAND

15   PROSECUTED THE CASE. I THINK THE DA'S OFFICE OR

16   CITY ATTORNEY'S OFFICE WAS RECUSED, CORRECT?

17   BY MR. KNIGHTSHEAD: YES, THAT'S CORRECT, JUDGE.

18   BY THE COURT: UNTIL SUCH TIME AS A DECISION WAS

19        MADE WHETHER TO PURSUE THE PROSECUTION, WHO

20   KNOWS?  ALL I KNOW IS, BASED UPON THE RECORD,

21   THAT'S ALL I CAN MAKE MY DECISIONS ON, AS YOU

22   KNOW.

23   BY MR. KNIGHTSHEAD: YES, SIR.

24   BY THE COURT: THERE WAS A -- NOT EVEN A STAY

25        REQUESTED.

1    BY MR. KNIGHTSHEAD: THAT'S CORRECT, JUDGE, AND

2        I DON'T REFUTE THAT COMMENT.  I MEAN, THERE

3    WAS NO STAY REQUESTED.  I KNOW THERE WAS A

4    COUPLE OF CONTINUANCES FILED FOR THE SCHEDULING

5    CONFERENCE OR SCHEDULING ORDER.  BUT, THAT WAS

6    ABOUT IT.

7        AS FAR AS MR. HILBURN'S ACTIONS, I'M NOT

8    HERE TO ---

9    BY THE COURT: AND BY THE WAY, MR. HILBURN

10       REMAINS COUNSEL ON THIS CASE.  HE HAS NOT

11   FILED A MOTION IN MY COURT INFORMING ME THAT HE

12   IS NOT EVEN WITH THE CITY ATTORNEY'S OFFICE ANY

13   MORE.  SO, HE CONTINUES, FRANKLY, AS FAR AS I

14   KNOW, TO GET NOTICES OF THESE HEARINGS.

15   BY MR. KNIGHTSHEAD: AND THAT IS ALSO MY

16       APPRECIATION ---

17   BY THE COURT: HE HAS NOT FILED A MOTION TO

18       WITHDRAW.

19   BY MR. KNIGHTSHEAD: AND THAT IS MY APPRECIATION

20       AS WELL, JUDGE.  AS THE COURT IS AWARE, I

21   CANNOT FILE A MOTION ON HIS BEHALF.  HE HAS TO

22   FILE THE MOTION HIMSELF.

23   BY THE COURT: I UNDERSTAND.

24   BY MR. KNIGHTSHEAD: SO, BUT, IN ANY EVENT,

25       JUDGE, I CAN'T SPEAK ON THE CASE PRIOR TO

1    ME RECEIVING IT.  AND JUST SO THE RECORD CAN BE

2    CLEAR, I DIDN'T RECEIVE THE CASE.  THE CASE

3    WASN'T ASSIGNED TO ME.  WHEN MR. HILBURN LEFT

4    ABRUPTLY, THERE WAS 40 SOME-ODD FILES TO GO

5    AROUND.

6    BY THE COURT: WHEN DID YOU RECEIVE THE -- WHEN

7         WAS THE CASE ASSIGNED TO YOU?

8    BY MR. KNIGHTSHEAD: TO BE HONEST, THE CASE WAS

9         NEVER ASSIGNED TO ME.  WHAT HAPPENED WAS,

10   I CAME INTO THE OFFICE ON APRIL 17TH.  IT WAS

11   THE DAY BEFORE, I THINK, WE GOT OFF FOR GOOD

12   FRIDAY -- EASTER.  CITY WAS CLOSING AT TWO

13   O'CLOCK.  I WAS IN THE OFFICE DOING SOME PAPER-

14   WORK.  I WAS PRESENTED WITH A DOCUMENT THAT WAS

15   A MOTION FOR A PRELIMINARY DEFAULT, OR, FOR THE

16   CLERK'S OFFICE.  I GOT IT.  AT THAT POINT I

17   FILED A MOTION TO ENROLL.  AND I FILED AN

18   ANSWER, JUST TRYING TO HURRY UP AND GET IT DONE.

19   IT WAS NEVER ASSIGNED TO ME.

20        NOW, I REALIZE THERE WAS ---

21   BY THE COURT: SO, YOU ARE TELLING ME THAT YOU

22        ARE GOING TO GET HAZARDOUS-DUTY PAY NOW,

23   MR. KNIGHTSHEAD?

24   BY MR. KNIGHTSHEAD: I DIDN'T GET HAZARDOUS-DUTY

25        PAY.  AND AS THE ARTICLE WILL PROVIDE, I

**ERNEST TAYLOR VS. CITY OF BATON ROUGE, ET AL, 6-18-14**     **11**

| | |
|---|---|
| 1 | STAYED WAY AFTER HOURS FILING THIS. |
| 2 | BY THE COURT: WELL, I WILL TELL YOU, WHICH IS |
| 3 | ALL THE MORE REASON WHY I MAY HAVE TO |
| 4 | INSTRUCT MS. ROPER TO APPEAR IN MY COURT.  AS |
| 5 | I'VE TOLD LAWYERS MANY TIMES AND IN MY 25 YEARS |
| 6 | OF PRACTICE BEFORE MY APPOINTMENT, MOST OF MY |
| 7 | PRACTICE WAS IN FEDERAL COURT, EVEN DURING MY |
| 8 | TIME IN PRIVATE PRACTICE.  AND I TELL LAWYERS |
| 9 | ALL THE TIME, THAT IT IS A SINGLE PRIVILEGE TO |
| 10 | PRACTICE IN FEDERAL COURT.  BUT ALONG WITH THAT |
| 11 | GREAT PRIVILEGE COMES SOME VERY, VERY IMPORTANT |
| 12 | OBLIGATIONS. |
| 13 | BY MR. KNIGHTSHEAD: YES, SIR. |
| 14 | BY THE COURT: AND HOW THE CITY ATTORNEY'S |
| 15 | OFFICE DOES NOT HAVE IN PLACE SOME |
| 16 | SYSTEM THAT WOULD PREVENT THIS KIND OF THING. |
| 17 | THIS IS BASIC STUFF THAT ANY GOVERNMENT OFFICE, |
| 18 | GOVERNMENT LAW OFFICE, THAT IS, ANY PRIVATE |
| 19 | SECTOR OFFICE, HAS SYSTEMS IN PLACE TO PREVENT |
| 20 | PRECISELY THIS KIND OF THING.  EVEN -- WHICH IS |
| 21 | PRECISELY WHY YOU WANT TO HAVE MORE THAN ONE |
| 22 | LAWYER ON THE PLEADINGS.  NOW, IN THIS CASE, I |
| 23 | MEAN, YOU MAY BE THE ONLY ONE ON THE PLEADINGS |
| 24 | IN THIS CASE, WHICH IS SOMETHING ELSE I DON'T |
| 25 | UNDERSTAND.  AND AGAIN, I'M NOT TRYING -- WELL, |

1          I GUESS I AM QUESTIONING THE MANAGEMENT STYLE

2          OF THE CITY ATTORNEY'S OFFICE.  BUT, THIS IS

3          INEXCUSABLE.

4              DANIELLE, IS THERE ANYONE OTHER THAN MR.

5          KNIGHTSHEAD ON THE PLEADINGS FOR THE CITY

6          ATTORNEY NOW THAT MR. HILBURN IS NO LONGER

7          COUNSEL OF -- WELL, HE IS TECHNICALLY STILL

8          COUNSEL OF RECORD?

9              IT'S YOU AND MR. HILBURN, THAT'S IT.

10         BY MR. KNIGHTSHEAD: THAT'S CORRECT, JUDGE.

11         BY THE COURT: OKAY.

12         BY MR. KNIGHTSHEAD: AND LIKE I SAID BEFORE,

13             JUDGE, WHEN I RECEIVED THE DOCUMENT THAT

14         -- APPARENTLY WHAT HAPPENED, MR. HILBURN

15         EMAILED MICHELLE, WHO WAS HIS FORMER ASSISTANT

16         IN THE OFFICE.  SHE PRESENTED THE DOCUMENT TO

17         ME AND I PROCEEDED AS I ADVISED THE COURT TO

18         FILE A MOTION TO ENROLL AND TO FILE AN ANSWER.

19         THAT'S ALL I COULD DO.

20             AT THAT POINT -- BUT IT WAS THE DAY AFTER

21         THE DEFAULT WAS FILED.  APPARENTLY, MR. HILBURN

22         HAD SOME CONTACT WITH COUNSEL, MR. DONAHUE, AND

23         ADVISED HIM THAT I WOULD BE THE ATTORNEY

24         HANDLING THE CASE.  BECAUSE IT MAY HAVE BEEN

25         HIS APPRECIATION THAT ALL HIS FILES WERE GOING

1      TO BE DUMPED ON ME.  BUT THAT WASN'T THE OFFICE

2      POLICY OR THAT WASN'T THE CIRCUMSTANCE.

3         SO, AS FAR AS ME RECEIVING THE FILE, I GOT

4      IT THE DAY BEFORE GOOD FRIDAY AND AS SOON AS I

5      GOT THE DOCUMENTATION WE WERE GOING INTO

6      DEFAULT, I JUST STAYED, PREPARED IT AND I

7      FILED EVERYTHING I COULD AT THAT POINT IN TIME.

8      IT WAS, YOU KNOW, I WASN'T FAMILIAR AND NEVER

9      TALKED TO MR. DONAHUE BEFORE.  I NEVER HAD ANY

10     KIND OF EMAIL CONVERSATION OR ANYTHING ABOUT

11     THE CASE PRIOR TO THAT POINT.

12        AND, SO, BY DEFAULT, BY ME BEING IN THE

13     OFFICE AT THAT TIME, I GOT STUCK WITH IT BECAUSE

14     I FILED A MOTION TO ENROLL IN THE CASE.

15     BY THE COURT: I'M SURE YOU LEARNED A VERY

16        VALUABLE LESSON ABOUT GOING INTO THE

17     OFFICE ON GOOD FRIDAY.

18     BY MR. KNIGHTSHEAD: AND I HAD -- AND JUDGE, I

19        MEAN, IT WAS AFTER HOURS, I MEAN, YOU KNOW,

20     THE DAY BEFORE A HOLIDAY.  THEY MAYOR HAD

21     RELEASED EVERYONE AT TWO O'CLOCK.  I THINK YOU

22     CAN LOOK AT THE TIME AND SEE IT WAS AFTER

23     TWO O'CLOCK WHEN THE MOTION TO ENROLL AND THE

24     ANSWER WERE FILED.  SO, WE WERE THERE LATE

25     PREPARING DOCUMENTATION. NO ONE ELSE WAS IN THE

1    OFFICE SO THERE WAS NO ONE ELSE FOR ME TO SAY,

2    HEY, CAN YOU JOIN ON THIS MATTER WITH ME SO THAT

3    WE CAN FILE THIS.  AND SO I -- LIKE I SAID, BY

4    DEFAULT, ME WORKING, I JUST PREPARED IT AND

5    FILED IT.  SO, I ENDED UP WITH THE CASE BASED ON

6    THAT REASON.

7    BY THE COURT: ALL RIGHT.  LET ME HEAR FROM MR.

8         DONAHUE, IF YOU WANT TO BE HEARD ON THE

9    ISSUE, MR. DONAHUE.  AND ACTUALLY, LET ME ASK

10   YOU, SIR, WHY DON'T YOU COME FORWARD.

11        TELL ME ABOUT ANY DISCUSSIONS YOU MAY HAVE

12   HAD WITH MR. HILBURN.  LET'S SAY, BEGIN -- WHEN

13   DID HE LEAVE THE CITY ATTORNEY'S OFFICE?

14   BY MR. KNIGHTSHEAD: JUDGE, HE LEFT, ACTUALLY

15        IN MARCH.  HE WAS SUPPOSED TO LEAVE IN

16   APRIL AND ACTUALLY WE FOUND OUT ABOUT A WEEK --

17   I WAS TELLING MR. DONAHUE, ABOUT A WEEK BEFORE

18   HE DECIDED TO LEAVE HE JUST WALKED INTO THE

19   OFFICE ONE DAY AND SAID, HEY, I'M RETIRING.  AND

20   THAT WAS KIND OF HOW WE GOT NOTICE.  I GOT STUCK

21   WITH IT.  AND I'M NOT TRYING TO -- IT'S NOT THE

22   COURT'S ISSUE ---

23   BY THE COURT: NO, I UNDERSTAND.  BUT, THAT'S

24        FINE.  ALL I'M ASKING IS WHEN DID HE LEAVE

25   THE OFFICE.

1      BY MR. KNIGHTSHEAD: THAT'S RIGHT.

2      BY THE COURT: IT WAS IN MARCH OF 2014, CORRECT?

3      BY MR. KNIGHTSHEAD: THAT'S CORRECT.

4      BY THE COURT: OKAY.

5      BY MR. DONAHUE: AND, YOUR HONOR, MR. HILBURN

6          HAD REPRESENTED TO ME, I BELIEVE IN EARLY

7      FEBRUARY, THAT HE WAS, AT THAT POINT, SEPARATED

8      FROM THE PARISH ATTORNEY'S OFFICE.  THERE HAD

9      BEEN A SCHEDULING CONFERENCE SET FOR THE END OF

10     JANUARY AND I FILED A STATUS REPORT, I BELIEVE,

11     ON JANUARY 23RD.  I BELIEVE IT'S DOCKET ENTRY

12     NUMBER 7, INDICATING THAT I WAS NO LONGER ABLE

13     TO GET IN TOUCH WITH MR. HILBURN.  MY CALLS WENT

14     UNANSWERED, CORRESPONDENCE WENT UNANSWERED.  OF

15     COURSE, NO EMAIL CORRESPONDENCE.

16         AFTER FILING THE STATUS REPORT, MR. HILBURN

17     THEN CONTACTED ME AND INFORMED ME THAT HE HAD

18     LEFT THE PARISH ATTORNEY'S OFFICE.  THAT HIS

19     ASSISTANT, MS. BAILY, WAS SUPPOSED TO HAVE

20     FILED CERTAIN THINGS INTO THE RECORD BUT THAT

21     HAD NOT BEEN DONE.  AND THAT WHILE HE WOULD BE

22     HANDLING THE NEWLY SCHEDULED STATUS CONFERENCE

23     THAT HE WAS LONGER REPRESENTING -- NO LONGER

24     PART OF THE CITY/PARISH ATTORNEY'S OFFICE AND

25     THAT HE WOULD NO LONGER BE REPRESENTING THEM IN

1       THIS SUIT.  THAT IT WOULD BE ASSIGNED TO

2       SOMEONE ELSE.

3       BY THE COURT: DID HE SAY THAT IT WOULD BE

4            ASSIGNED TO MR. KNIGHTSHEAD?

5       BY MR. DONAHUE: HE DID.  THAT WOULD BE AFTER --

6            THAT WOULD HAVE BEEN EARLY MARCH, I WANT

7       TO SAY.  THAT WAS AFTER ---

8       BY THE COURT: OUR RECORD REFLECTS THAT IN MARCH

9            OF THIS YEAR HE -- THAT'S WHEN HE INFORMED

10      THE COURT, RIGHT?  BUT HE DIDN'T FILE A MOTION

11      TO WITHDRAW, WE KNOW THAT.

12      BY LAW CLERK: NO, SIR.

13      BY THE COURT: ALL RIGHT.

14      BY MR. DONAHUE: AND THAT WOULD HAVE COINCIDED

15           WITH THE SUBMISSION OF THE STATUS REPORT

16      TO THE MAGISTRATE JUDGE.

17      BY THE COURT: THAT'S RIGHT.

18      BY MR. DONAHUE: AND THAT WAS -- HE EVENTUALLY

19           GOT IN CONTACT WITH ME AROUND THAT TIME AND

20      INFORMED ME HE HAD LEFT AND THAT MR. KNIGHTSHEAD

21      WAS GOING TO BE TAKING OVER THE CASE.

22           FROM THAT POINT I ATTEMPTED ON NUMEROUS

23      OCCASIONS TO CONTACT MR. KNIGHTSHEAD AT THE

24      CITY/PARISH ATTORNEY'S OFFICE.  I LEFT MULTIPLE

25      MESSAGES FOR MS. BAILY, WHO I UNDERSTAND IS HIS

1    ASSISTANT, INDICATING THAT I NEEDED TO SPEAK

2    WITH HIM ABOUT MATTERS IN THIS CASE.  I ALSO

3    SENT WRITTEN CORRESPONDENCE FORWARDING THE

4    FILINGS THAT WERE BEING MADE IN FEDERAL COURT,

5    TO HIM SO THAT HE WAS AWARE OF WHAT WAS GOING ON

6    AND PARTICULARLY THE SCHEDULING ORDER THAT HAD

7    BEEN ENTERED.

8         THE MOTION FOR THE ENTRY OF CLERK'S

9    DEFAULT WASN'T FILED UNTIL TWO DAYS AFTER THE

10   DEADLINE FOR INITIAL DISCLOSURES HAD PASSED. AND

11   HAVING NOT RECEIVED ANYTHING FROM THE PARISH

12   ATTORNEY'S OFFICE, AND HAVING NO ONE -- NO

13   CONTACT PERSON, NO RESPONSES TO MY ATTEMPTS TO

14   CONTACT THEM, THAT'S WHEN I FILED FOR THE

15   CLERK'S ENTRY OF DEFAULT.  AND SHORTLY

16   THEREAFTER, MR. KNIGHTSHEAD CONTACTED ME AND

17   ENGAGED.

18   BY THE COURT: ALL RIGHT.  THANK YOU.

19        MR. KNIGHTSHEAD, I DON'T KNOW HOW THIS

20   HAPPENED.  I MEAN, AGAIN, MR. DONAHUE MADE

21   REPEATED ATTEMPTS TO CONTACT YOU THROUGH YOUR

22   ASSISTANT.  YOU NEED A NEW ASSISTANT.  IF, IN

23   FACT, YOU DIDN'T RECEIVE ANY OF THOSE

24   CORRESPONDENCE OR THOSE CALLS, I HOPE THAT YOU

25   TAKE SERIOUSLY -- AND I REALIZE THAT THERE IS

```
1        CIVIL SERVICE PROTECTION BUT THAT IS

2        UNACCEPTABLE.

3        BY MR. KNIGHTSHEAD: JUDGE, I HAVE NO ASSISTANT.

4             MICHELLE BAILEY IS NOT MY ASSISTANT

5        ANYMORE.  SHE HAS ---

6        BY THE COURT: WAS SHE YOUR ASSISTANT IN MARCH?

7             WAS IT MARCH, MR. DONAHUE, YOU ATTEMPTED

8        TO REACH MR. KNIGHTSHEAD?

9        BY MR. DONAHUE: FEBRUARY AND MARCH, YOUR HONOR.

10       BY THE COURT: WAS SHE YOUR ASSISTANT IN

11            FEBRUARY AND MARCH?

12       BY MR. KNIGHTSHEAD: SHE BECAME -- AND, JUDGE, I

13            WANT TO GET THE DATES ACCURATE. I DON'T

14       WANT TO MISREPRESENT TO THE COURT.

15       BY THE COURT: I UNDERSTAND.

16       BY MR. KNIGHTSHEAD: WHEN MR. HILBURN LEFT, MS.

17            BAILEY LEFT AND TOOK A POSITION IN ANOTHER

18       OFFICE.  DURING THAT PERIOD OF TIME -- IT WAS

19       SOMETIME IN MARCH OR APRIL, SHE LEFT.  SHE WAS

20       -- SHE WASN'T MY ASSISTANT ANYMORE.

21       BY THE COURT: BUT SHE -- IS SHE STILL UNDER THE

22            CITY ATTORNEY'S OFFICE?

23       BY MR. KNIGHTSHEAD: SHE WORKS FOR -- SHE'S STILL

24            UNDER THE -- SHE WORKS FOR -- I CAN'T THINK

25       OF WHAT DEPARTMENT BUT IT DOES FALL UNDER THE
```

1      CITY/PARISH; THAT'S CORRECT, JUDGE.

2      BY THE COURT: BUT IN THE CITY ATTORNEY'S OFFICE?

3      BY MR. KNIGHTSHEAD: IN THE CITY ATTORNEY'S

4          OFFICE.

5      BY THE COURT: ALL RIGHT.

6      BY MR. KNIGHTSHEAD: IT'S MY APPRECIATION.  I

7          DON'T KNOW THE SPECIFICS ABOUT IT BECAUSE

8      IT'S A TRANSFER WITHIN THE CITY/PARISH BUT

9      I'M NOT ---

10     BY THE COURT: BUT IT JUST SEEMS TO ME THAT, I

11         MEAN, NO ONE OVER THERE TOOK SERIOUSLY

12     EITHER THE OBLIGATION TO CONFER WITH OPPOSING

13     COUNSEL WHICH IS AN ETHICAL ISSUE, FRANKLY, AS

14     WELL AS A REQUIREMENT OF OUR RULES.  I JUST --

15     I DON'T KNOW WHAT'S GOING ON THERE.

16     BY MR. KNIGHTSHEAD: AND, JUDGE, JUST AS -- IF I

17         CAN ADDRESS THAT.  I THINK MR. DONAHUE CAN

18     ATTEST, WHATEVER EMAILS HE HAD WITH MR. HILBURN,

19     I WAS NEVER CC'D ON THEM. I WASN'T.  NO ONE --

20     AND HE SAYS -- AND I'M NOT DISPUTING WHAT HE

21     SAID ABOUT HE MADE NUMEROUS ATTEMPTS TO CONTACT

22     ME.  BUT I THINK THE COURT CAN LOOK IN THE

23     RECORD.  THERE IS NOTHING THROUGH THE COURT'S

24     OFFICE.  THERE IS NO MOTION TO ENROLL BY ME.

25     THERE IS NO LETTER OR EMAIL SAYING -- HE DIDN'T

1      ATTACH A COPY OF A FAX WHERE HE SAID I FAXED

2      OVER A LETTER THAT SAID, HEY, IT'S MY

3      APPRECIATION THAT YOU HAVE BEEN ENROLLED IN THIS

4      CASE.  HERE IS THE SCHEDULING ORDER. THERE IS

5      NOTHING TO THAT REGARD.

6          I DIDN'T RECEIVE ANY DOCUMENTATION.  THE

7      FIRST THING I RECEIVED WAS THE DEFAULT ENTRY

8      AND AT THAT POINT I FILED A MOTION TO ENROLL.  I

9      FILED AN ANSWER AND THEN I MADE EFFORTS TO

10     CONTACT HIM.  NOW, SINCE THEN, I THINK HE CAN

11     ATTEST, WE'VE EMAILED BACK AND FORTH NUMEROUS

12     TIMES AND WE'VE BEEN IN CONSTANT CONTACT.

13         BUT PRIOR TO THAT I ---

14     BY THE COURT: I UNDERSTAND THAT. BUT WHAT I'M

15         SAYING IS THAT THERE IS A GLITCH IN THE

16     SYSTEM SOMEWHERE IN THE CITY ATTORNEY'S OFFICE

17     AND IT'S AN UNACCEPTABLE GLITCH.  I DON'T CARE,

18     FRANKLY, HOW THE CITY ATTORNEY RUNS THE OFFICE

19     AS LONG AS IT DOESN'T INVOLVE CASES IN MY COURT.

20     BY MR. KNIGHTSHEAD: YES, SIR.

21     BY THE COURT: AND RIGHT NOW, AGAIN, WHAT IS

22         VERY, VERY TROUBLING IS, THIS IS A VERY

23     SERIOUS CASE.

24     BY MR. KNIGHTSHEAD: YES, SIR.

25     BY THE COURT: AND EITHER MR. HILBURN OR YOU OR

1          MR. ROPER OR MS. BAILEY OR SOMEBODY

2     APPARENTLY DIDN'T GIVE -- CARE ENOUGH ABOUT THIS

3     CASE OR THIS ISSUE TO ABIDE BY THE ETHICAL

4     OBLIGATION MUCH LESS THE RULES OF THE COURT OR

5     THE FEDERAL RULES OF CIVIL PROCEDURE.  AND, SO,

6     MR. KNIGHTSHEAD, I'M -- CONSIDER I WILL NOT

7     ISSUE AN ORDER TO SHOW CAUSE AT THIS TIME.  BUT

8     IT'S LIKELY, AND I THINK, DIRECT YOU TO INFORM

9     MS. ROPER THAT IT IS LIKELY THAT I WILL ENTER AN

10    ORDER TO SHOW CAUSE WHY SHE AND PERHAPS OTHERS

11    IN THE OFFICE SHOULD NOT BE SANCTIONED FOR

12    COMPLETELY IGNORING THE ORDERS -- THE RULES OF

13    THIS COURT.

14    BY MR. KNIGHTSHEAD: IT'S -- I ---

15    BY THE COURT: THERE IS NO NEED FOR YOU TO

16         RESPOND AT THIS TIME.

17    BY MR. KNIGHTSHEAD: I CAN ADDRESS THAT, JUDGE,

18         IF THE COURT MAY BE INCLINED.

19    BY THE COURT: GO RIGHT AHEAD.

20    BY MR. KNIGHTSHEAD: I'VE WORKED FOR THE CITY/

21         PARISH FOR SOME TIME.  I WORKED FOR THE

22    DA'S OFFICE IN ORLEANS.  AND I'VE HELD OTHER

23    POSITIONS THROUGHOUT.  YOU KNOW, IN THIS

24    PARTICULAR OCCUPATION OF BEING A LAWYER, I KNOW

25    I HAVEN'T PRACTICED LAW AS LONG AS YOUR HONOR.

1      SOMETIMES IN THIS SITUATION, I MEAN, THERE ARE

2      CHECKS AND BALANCES.  I'M THE LAWYER FOR ABC IN

3      THIS CITY.  IT'S ALCOHOL, BEVERAGE AND CONTROL.

4      AND FOR THE CITY/PARISH, NOT THE STATE.  AND IN

5      THERE, A LOT OF TIMES WE SEND PEOPLE IN TO BE,

6      YOU KNOW, BASICALLY WE SEND UNDERCOVER, YOU

7      KNOW, PEOPLE UNDER 21 TO SEE IF THEY CAN BUY

8      LIQUOR.  EVERY NOW AND THEN A CLERK SELLS

9      SOMEONE ALCOHOL THEY ARE NOT SUPPOSED TO.  JUST

10     BEAR WITH ME; I'LL GET TO WHERE I'M GOING.

11     BY THE COURT: SURE.  GO AHEAD.

12     BY MR. KNIGHTSHEAD: WE CITE THEM.  WE CITE THE

13         INDIVIDUAL WHO MADE THE SALE.  WE CITE THE

14     STORE OWNER.  WE HAVE MEETINGS EVERY SECOND AND

15     FOURTH THURSDAY OF THE MONTH.  AND THE STORE

16     OWNERS COME IN AND SAY, WELL, LOOK, I'VE SPENT

17     $200,000.00 ON ALL THESE COMPUTER THINGS AND

18     YOU SWIPE YOUR CARD.  AND THEY'VE GOT CAMERAS.

19     I'VE GOT SIGNS EVERYWHERE IN THE STORE ABOUT

20     BEING A TEAM BUT I CAN'T CONTROL HUMAN ERROR.

21     IF AN INDIVIDUAL WHO I TRAIN AND I'VE PROVIDED

22     ALL THESE RESOURCES CHOOSES TO IGNORE THEM,

23     WHAT AM I SUPPOSED TO DO.  I HEAR THAT ALL THE

24     TIME.

25         NOW, AS FAR AS MS. ROPER IS CONCERNED, THE

1    THING IS, WE ALL HAVE A RESPONSIBILITY, AND IF

2    I DIDN'T SHOW UP TO COURT TODAY, IF I DIDN'T

3    FILE AN ANSWER, IF I DIDN'T HAVE ANY CONTACT

4    WITH MR. DONAHUE.  IF THE CASE IS ASSIGNED TO

5    ME, THAT IS MY RESPONSIBILITY AND THE

6    RESPONSIBILITY FALLS ON ME.  JUST BECAUSE YOU

7    HIRE ME -- NOW, AT SOME POINT, YOU TAKE NOTICE

8    THAT, HEY, I'M NOT DOING MY JOB, THEN AT THAT

9    POINT IT CAN BE ADDRESSED.

10   BY THE COURT: WELL, LET ME SAY THIS, MR.

11        KNIGHTSHEAD, I APPRECIATE YOU ATTEMPTING

12   TO FALL ON THE SWORD FOR MS. ROPER AND PERHAPS

13   OTHERS AT THE CITY ATTORNEY'S OFFICE.  BUT,

14   AGAIN, I GO BACK TO MY POINT THAT I MENTIONED

15   EARLIER.  THERE HAS TO BE A BETTER SYSTEM IN

16   PLACE. HAD THERE BEEN A MORE EFFECTIVE CASE

17   MANAGEMENT SYSTEM, AND I'M NOT GOING TO GET

18   INTO IT AT THIS POINT -- THIS WOULD NOT HAVE

19   HAPPENED.  THIS IS WHAT WE ARE TALKING ABOUT

20   HERE.  A CASE-MANAGEMENT SYSTEM.  FOR A

21   GOVERNMENT OFFICE AS LARGE AS THE CITY

22   ATTORNEY'S OFFICE AND FOR AN AGENCY THAT IS

23   CHARGED WITH PROTECTING THE INTEREST OF THE

24   CITY/PARISH TO NOT HAVE THESE KINDS OF

25   SYSTEMS IS -- JUST DEFIES LOGIC.  I COULD USE

1      MORE STRONGER LANGUAGE, BUT I WON'T FOR FEAR

2      THAT THE LANGUAGE THAT I REALLY WANT TO USE

3      MIGHT BE, I'LL SAY, ACTIONABLE IN SOME WAY,

4      EITHER WITH THIS COURT OR PERHAPS EVEN WITH

5      CHARLIE PLATTSMIER AT SOME POINT.  BUT, I'LL

6      SIMPLY SUFFICE IT TO SAY THAT I WILL NOTIFY

7      YOU WITHIN THE NEXT 24 HOURS WHAT THE COURT

8      WILL DO IN RESPONSE TO THIS.

9          BUT THIS IS ---

10     BY MR. KNIGHTSHEAD: AND, JUDGE, IF I MAY, WE

11         DO HAVE SYSTEMS IN PLACE AND THEY HAVE

12     CHECKS AND BALANCES.  BUT, AGAIN, AS I SAID

13     BEFORE ---

14     BY THE COURT: WELL -- AND I WILL TELL YOU -- AND

15         I UNDERSTAND YOUR POINT.  BUT MR. HILBURN

16     SIGNS A DOCUMENT WAIVING SERVICE.  HE KNOWS HE'S

17     GOT TO FILE SOMETHING WITHIN 60 DAYS.  NOVEMBER

18     8TH, I BELIEVE IT IS, COMES AND GOES.  STILL

19     NOTHING IN THE SYSTEM.

20         ACCORDING TO MR. DONAHUE HE MADE REPEATED

21     ATTEMPTS TO TRY TO, AT LEAST, ENGAGE IN SOME

22     DISCUSSIONS WITH SOMEONE AT THE CITY ATTORNEY'S

23     OFFICE.  AND HIS EFFORTS WERE APPARENTLY -- HE

24     WAS IGNORED, SO.

25         ALL RIGHT.  THANK YOU, MR. KNIGHTSHEAD,

1          I'LL LET YOU KNOW. AGAIN, I KNOW THESE THINGS

2          HAPPEN.  IT'S SOMETHING THEY DO AND -- BU,

3          AGAIN, I WILL NOTIFY YOU SHORTLY AS TO HOW

4          THE COURT WILL PROCEED WITH THAT.

5              LET ME GO ON TO ADDRESS SOME OF THE

6          MOTIONS, THE FOUR PENDING MOTIONS.  BUT I ALSO

7          WANT TO, BECAUSE I THINK IT'S IMPORTANT TO

8          REVIEW THE TIME LINE OF THESE PROCEEDINGS.

9          BECAUSE THIS WILL HAVE A DIRECT BEARING ON MY

10         ORDERS WITH RESPECT TO SEVERAL OF THESE MOTIONS.

11             THE PROCEDURAL TIME LINE HERE IS AS

12         FOLLOWS -- AND YOU CAN HAVE A SEAT, MR.

13         KNIGHTSHEAD.

14         BY MR. KNIGHTSHEAD: YES, SIR.

15         BY THE COURT: THIS LAWSUIT WAS FILED BY THE

16             PLAINTIFF ON SEPTEMBER 3, 2013.  ON

17         OCTOBER 22ND, MR. HILBURN, ON BEHALF OF THE

18         DEFENDANT, SIGNED A WAIVER OF SERVICE OF

19         SUMMONS.  THAT WAIVER STATED EMPHATICALLY THAT

20         THE ENTITY, THE PARTY, MUST FILE AND SERVE

21         AN ANSWER UNDER RULE 12 WITHIN 60 DAYS OF

22         SEPTEMBER, IN THIS CASE, SEPTEMBER 9TH, AND

23         THAT IF THERE WAS A FAILURE TO DO SO A DEFAULT

24         JUDGEMENT WOULD BE ENTERED.

25             ON OCTOBER 22ND PLAINTIFF FILED THE EXECUTED

1  A WAIVER OF SERVICE OF SUMMONS INTO THE RECORD.

2      NOW, NOVEMBER 8, 2013 WAS THE DEADLINE FOR

3  FILING THE ANSWER OR DISPOSITIVE MOTION IN THE

4  CASE. DEFENDANTS FAILED TO FILE BY THE DEADLINE.

5  IN FACT, NO MOTION FOR AN EXTENSION OF TIME WAS

6  FILED INTO THE RECORD EITHER.

7      IT WASN'T UNTIL APRIL 16TH THAT THE

8  DEFENDANT FILED A MOTION FOR PRELIMINARY

9  DEFAULT, SEEKING A PRELIMINARY DEFAULT FROM THE

10 CLERK'S OFFICE. OBVIOUSLY, AS WE KNOW, RULE 55A

11 ENTITLES THE CLERK TO ISSUE A PRELIMINARY

12 DEFAULT JUDGEMENT. THE CLERK OF COURT GRANTED

13 IT, IN FACT, ON THAT DAY.  IT WAS THE FOLLOWING

14 DAY, MR. KNIGHTSHEAD, THAT YOU FILED AN ANSWER.

15 IT WAS FIVE MONTHS, NINE DAYS LATE.

16     I WILL ALSO NOTE THAT NO LEAVE OF COURT WAS

17 REQUESTED TO FILE THE OUT-OF-TIME ANSWER OR

18 MOTION.  SO, WITH RESPECT TO THE MOTION TO SET

19 ASIDE THE DEFAULT JUDGEMENT FILED BY THE CITY

20 ATTORNEY'S OFFICE, CERTAINLY IN THIS CIRCUIT

21 THAT -- IN DETERMINING TO SET ASIDE A DEFAULT

22 DECREE, THE COURT IS VESTED WITH A GREAT DEAL OF

23 LATITUDE AND DISCRETION TO DO SO.

24     THE COURT IS REQUIRED TO CONSIDER WHETHER

25 THE DEFAULT WAS, OR THE FAILURE TO REPLY OR

1    RESPOND OR TO FILE AN ANSWER WAS WILLFUL AND

2    WHETHER PREJUDICE WOULD RESULT TO THE PARTY WHO

3    FAILS TO FILE AND WHETHER THERE WERE ANY

4    MERITORIOUS DEFENSES THAT ARE OR SHOULD HAVE

5    BEEN PRESENTED.

6         I'LL ADDRESS THAT LATER.  BUT, LET ME GO ON

7    TO THE MOTION TO STRIKE THE DEFENDANTS ANSWERS.

8    AGAIN, RULE 12F EMPOWERS THE COURT TO STRIKE

9    A DEFENDANTS ANSWER WHEN IT IS FILED OUTSIDE OF

10   THE TIME FRAMES SET FORTH IN RULE 12A.  NOW, THE

11   5TH CIRCUIT HAS IDENTIFIED SEVERAL FACTORS FOR A

12   TRIAL COURT TO CONSIDER WHEN CONSIDERING SUCH A

13   MOTION.  FIRST, WHETHER THE MATERIAL ISSUES --

14   WHETHER MATERIAL ISSUES OF FACT ARE AT ISSUE IN

15   THE CASE.  SECOND, WHETHER THERE HAS BEEN

16   SUBSTANTIAL PREJUDICE. THIRD, WHETHER THE

17   GROUNDS FOR DEFAULT ARE CLEARLY ESTABLISHED.

18   FOUR, WHETHER DEFAULT WAS CAUSED BY GOOD FAITH

19   OF STATE OR EXCUSABLE NEGLECT.  FIVE, THE

20   HARSHNESS OF THE DEFAULT JUDGEMENT.  AND, SIX,

21   WHETHER THE COURT WOULD THINK ITSELF OBLIGED TO

22   SET ASIDE THE DEFAULT ON THE DEFENDANT'S MOTION.

23        SO, AGAIN, THERE ARE SEVERAL FACTORS FOR

24   THE COURT TO CONSIDER.  WITH RESPECT, AGAIN, TO

25   THE DEFENDANT'S MOTION TO SET ASIDE THE CLERK'S

1    ENTRY OF DEFAULT I WILL NOTE AND SPECIFICALLY

2    FIND THAT DEFENDANTS HAVE FAILED TO STATE WHY

3    THE MATTER WAS NOT ASSIGNED TO NEW COUNSEL.  THE

4    DEFENDANTS HAVE NOT PROVIDED SATISFACTORY

5    EXPLANATION TO WHY THIS MATTER, FOR SUCH A

6    PROLONGED PERIOD OF TIME, WENT COMPLETELY

7    UNADDRESSED BY THE CITY ATTORNEY'S OFFICE,

8    ESPECIALLY IN VIEW OF THE INFORMATION BY

9    PLAINTIFF'S COUNSEL THAT THERE WAS SEVERAL

10   EFFORTS MADE TO CONTACT THE CITY ATTORNEY

11   ASSIGNED TO THE CASE AND TO ENGAGE IN SOME

12   DISCUSSIONS OR NEGOTIATIONS OF THE CASE.  SO,

13   I WILL SPECIFICALLY FIND THAT THERE HAS BEEN

14   A FAILURE TO PROVIDE ANY FACTS OR EVIDENCE THAT

15   ESTABLISH GOOD CAUSE FOR THE FAILURE TO FILE

16   THE TIMELY ANSWER.

17        NOW, SPECIFICALLY, IN DETERMINING WHETHER

18   THERE IS A GOOD CAUSE AS REQUIRED BY THE RULE

19   55C, THE COURT MUST CONSIDER THREE FACTORS.

20   FIRST, WHETHER THE DEFAULT WAS WILLFUL AND,

21   AGAIN, WHETHER SETTING ASIDE THE DEFAULT

22   JUDGEMENT WOULD PREJUDICE THE PLAINTIFF, AND

23   THIRD WHETHER THE DEFENDANT HAS PRESENTED A

24   MERITORIOUS DEFENSE, WHERE DEFENDANT'S

25   NEGLECT IS AT LEAST A PARTIAL CAUSE OF THE

1   FAILURE TO RESPOND, THE DEFENDANT HAS THE

2   BURDEN TO CONVINCE THE COURT THAT IT'S

3   NEGLECT WAS EXCUSABLE RATHER THAN WILLFUL.  AND

4   THE STANDARD FOR THAT IS A PREPONDERANCE OF THE

5   EVIDENCE.

6        HERE, AGAIN, THE DEFENDANTS HAVE FAILED TO

7   ESTABLISH BY PREPONDERANCE OF THE EVIDENCE THAT

8   THE NEGLECT WAS NOT WILLFUL.

9        AGAIN, MR. HILBURN DIDN'T LEAVE THE CITY/

10  PARISH ATTORNEY'S OFFICE UNTIL MARCH OF 2014.

11  HE KNEW WHEN HE FILED THE WAIVER OF SERVICE THAT

12  HE WAS OBLIGATED TO FILE SOME ANSWER OR

13  DISPOSITIVE MOTION BY NOVEMBER.  AND, YET,

14  AGAIN, THE CITY ATTORNEY'S OFFICE HAS FAILED,

15  AS OF THIS TIME, TO PRESENT THE COURT WITH A

16  REASONABLE -- ANY EVIDENCE OR ANY REASONS, IN

17  FACT, THAT WOULD ESTABLISH THE EXCUSABLE

18  NEGLECT.

19       SO, I CONCLUDE THAT IT IS -- THE FAILURE TO

20  FILE WAS DUE TO INEXCUSABLE NEGLECT.

21  ACCORDINGLY, THE DEFENDANT'S MOTION UNDER RULE

22  55C, TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT

23  IS DENIED.

24       LET ME MOVE ON NOW TO PLAINTIFF'S MOTION

25  TO STRIKE THE ANSWER, WHICH KIND OF GOES HAND

1    IN HAND WITH THE MOTION TO SET ASIDE THE

2    PRELIMINARY DEFAULT JUDGEMENT.

3        AGAIN, I HAVE NOT BEEN PROVIDED WITH ANY

4    REASONS, CERTAINLY NO GOOD REASONS WHY THE

5    DEFENDANT'S HAVE FAILED TO FILED THE ANSWER IN A

6    TIMELY WAY.  AGAIN, MR. KNIGHTSHEAD, IT'S MORE

7    OF A SITUATION OF MR. HILBURN NOT FILING THE

8    RULE THAT HE ACKNOWLEDGED WAS APPLICABLE HERE IN

9    THIS CASE.  AND I WON'T, AGAIN, REPEAT THE

10   STANDARD HERE BUT SUFFICE IT TO SAY THAT THERE

11   IS SIMPLY NO EXPLANATION THAT WOULD

12   CONTRADICT THE ARGUMENTS THAT FAILURE TO FILE

13   THE ANSWER WAS ATTRIBUTABLE TO EXCUSABLE

14   NEGLECT.

15       AND, SO, THE COURT WILL DENY OR, EXCUSE

16   ME, GRANT THE PLAINTIFF'S MOTION TO STRIKE

17   THE DEFENDANT'S ANSWER.

18       NEXT I HAVE THE DEFENDANT'S MOTION FOR

19   PRELIMINARY DEFAULT WHICH I'LL GET TO IN JUST

20   A MINUTE.  BUT, FIRST, LET ME JUST QUICKLY

21   DISPOSE OF YOUR MOTION, MR. DONAHUE, TO FILE

22   THE EVIDENCE CONVENTIONALLY -- THE VIDEO.  I'LL

23   GRANT THAT MOTION.

24       NOW, FINALLY, LET ME TAKE UP THE

25   PLAINTIFF'S MOTION, ESSENTIALLY, TO CONFIRM THE

1     PRELIMINARY DEFAULT THAT HAS BEEN ENTERED BY THE

2     CLERK'S OFFICE.  AGAIN, I MENTIONED THIS

3     EARLIER.  THE CITY ATTORNEY'S OFFICE IS

4     ENTRUSTED WITH A VERY, VERY IMPORTANT

5     RESPONSIBILITY OF DEFENDING THE

6     CONSTITUTIONALITY OF THE LAWS AND ORDINANCES OF

7     THIS PARISH.  AND ALTHOUGH I SEE NO

8     JUSTIFICATION FOR THE CITY/PARISH'S FAILURE TO

9     RESPOND IN ANY WAY TO THE ALLEGATIONS CONTAINED

10    IN THE PETITION, I JUST -- IN THE COMPLAINT, I

11    JUST -- THERE IS VERY SERIOUS CONSTITUTIONAL

12    ISSUES HERE. THE FACTORS THAT THE COURT MUST

13    CONSIDER, I'VE ALREADY CITED.  THE FACTORS OF --

14    HERE IN THE 5TH CIRCUIT, THAT IS.  AND I'M

15    PARTICULARLY CONCERNED ABOUT NUMBER FIVE.  FOR

16    INSTANCE THE HARSHNESS OF THE DEFAULT JUDGEMENT

17    INDICATES THAT CHALLENGES THE CONSTITUTIONALITY

18    OF THE ORDINANCE OF THE CITY/PARISH.

19        AND, SO, WHAT I WILL DO IS DEFER RULING ON

20    THE MOTION AT THIS TIME.  BECAUSE, I WILL AT

21    THIS TIME, NOT SIMPLY RELY ON THE FEDERAL RULES

22    OF CIVIL PROCEDURE, MR. KNIGHTSHEAD, BUT I WILL

23    SPECIFICALLY ORDER THE CITY/PARISH TO RESPOND TO

24    THE MOTION FOR THE DEFAULT JUDGEMENT AND TO

25    SPECIFICALLY ADDRESS THE CONSTITUTIONAL ISSUES

1    THAT HAVE BEEN RAISED BY THE PLAINTIFF.

2        I'M GOING TO SET A DEADLINE OF JUNE 30,

3    2014 FOR THE CITY/PARISH TO ADDRESS TWO ISSUES.

4    ONE, THE CONSTITUTIONALITY OF THE CODE OF

5    ARTICLE 13:95.3 AND TWO, THE CITY/PARISH'S

6    CONTINUED FAILURE TO RETURN THE FIREARM AT ISSUE

7    TO THE PLAINTIFF.

8        AGAIN, MR. KNIGHTSHEAD, THAT RESPONSE WILL

9    BE DUE ON JUNE 30TH.  THERE WILL BE NO EXTENSIONS

10   WHATSOEVER. I WILL ALLOW MR. TAYLOR -- MR.

11   DONAHUE, TO RESPOND TO THE PLAINTIFF'S -- THE

12   DEFENDANT'S FILING BY -- ON OR BEFORE JULY 10,

13   2014.

14        AGAIN, THESE ARE VERY SERIOUS

15   CONSTITUTIONAL ISSUES THAT HAVE BEEN RAISED.  I

16   THINK WE ALL HAVE AN INTEREST IN SEEING THESE

17   ISSUES RESOLVED ONE WAY OR ANOTHER AS QUICKLY AS

18   WE CAN POSSIBLY RESOLVE THEM.

19        IN THE MEANTIME, AGAIN, THE COURT WILL TAKE

20   UNDER ADVISEMENT THE ISSUE OF WHETHER TO ISSUE

21   AN ORDER TO SHOW CAUSE TO THE CITY ATTORNEY AND

22   THE CURRENT OR FORMER ASSISTANT CITY ATTORNEYS

23   FOR THEIR, WHAT I DEEM TO BE WILLFUL FAILURE TO

24   REPLY OR TO ANSWER OR TO FILE A DISPOSITIVE

25   MOTION, IN OTHER WORDS, TO JUST IGNORE THIS.

1          AND, MR. KNIGHTSHEAD, SHOULD I ISSUE THAT

2     RULING, I WILL SIMPLY INVITE YOU TO REDUCE TO

3     WRITING THE REASONS YOU CITED HERE IN COURT ON

4     THE RECORD.  OKAY.

5          ALL RIGHT.  ARE THERE ANY FURTHER ISSUES IN

6     THIS MATTER FROM EITHER SIDE.  ANYTHING FROM THE

7     PLAINTIFFS?

8     BY MR. DONAHUE: NO, YOUR HONOR.

9     BY THE COURT: MR. KNIGHTSHEAD?

10    BY MR. KNIGHTSHEAD: NO, YOUR HONOR.

11    BY THE COURT: ALL RIGHT, GENTLEMEN, THANK YOU

12         VERY MUCH.

13    BY MR. DONAHUE: THANK YOU, YOUR HONOR.

14    BY MR. KNIGHTSHEAD: THANK YOU, YOUR HONOR.

15    REPORTER'S NOTE: (THEREFORE, AT THIS TIME, THE

16    PROCEEDINGS WERE CONCLUDED.)

17

18          C E R T I F I C A T E

19          I CERTIFY THAT THE FOREGOING IS A

20    CORRECT TRANSCRIPT FROM THE RECORD OF THE

21    PROCEEDINGS IN THE ABOVE-ENTITLED NUMBERED

22    MATTER.

23    _____

24          CLARE SMITH-NEELY, CCR

25          OFFICIAL COURT REPORTER