UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

ERNEST TAYLOR                                                    CIVIL ACTION

VERSUS

THE CITY OF BATON ROUGE, ET AL.                    NO.: 13-00579-BAJ-RLB

RULING AND ORDER

Before the Court is a **Motion for Default Judgment (Doc. 26)**, filed by

Plaintiff Ernest Taylor ("Taylor"), seeking a default judgment against Defendants the

City of Baton Rouge, Carl Dabadie, Jr.[1] ("Dabadie"), Mary Roper[2] ("Roper"), Lisa

Freeman[3] ("Freeman"), Patrick Wennemann[4] ("Wennemann"), James Thomas[5]

("Thomas"), and Jane Doe[6] ("Doe") (collectively "Defendants"). Taylor further seeks an

order from this Court: (1) permanently enjoining the City of Baton Rouge from

---

[1] Dabadie is sued in his individual and official capacity as the current Baton Rouge Chief of Police. (Doc. 1, ¶ 7.)

[2] Roper is sued in her individual and official capacity as the East Baton Rouge Parish Attorney. (Doc. 1, ¶ 8.)

[3] Freeman is sued in her individual and official capacity as the Baton Rouge City Prosecutor. (Doc. 1, ¶ 9.)

[4] Wennemann is sued in his individual and official capacity as a corporal in the Baton Rouge Police Department. (Doc. 1, ¶ 10.)

[5] Thomas is sued in his individual and official capacity as an officer with the Baton Rouge Police Department. (Doc. 1, ¶ 11.)

[6] Doe is sued in her individual and official capacity as an officer with the Baton Rouge Police Department. (Doc. 1, ¶ 12.)

enforcing City of Baton Rouge, Louisiana and East Baton Rouge Parish, Louisiana Code of Ordinances § 13:95.3 ("13:95.3"); (2) directing the City of Baton Rouge to return Taylor's firearms;[7] and (3) scheduling a hearing, pursuant to Federal Rule of Civil Procedure 55(b), for the purpose of determining the amount of monetary damages to which Plaintiff is entitled.  Defendants oppose the motion.  (Doc. 28.)  Oral argument was held on June 18, 2014.  (Doc. 30.)  Jurisdiction is proper pursuant to 28 U.S.C. § 1331.  For the reasons stated below, Taylor's **Motion for Default Judgment (Doc. 26)** is **GRANTED**.

I.    **Background**

      A.    **Taylor's Allegations**

      On September 3, 2013, Taylor filed this lawsuit against Defendants under 42 U.S.C. § 1983 ("Section 1983"); the Second Amendment to the United States Constitution, U.S. Const. amend. II; Fourth Amendment to the United States Constitution, U.S. Const. amend. IV; Fifth Amendment to the United States Constitution, U.S. Const. amend. V; Fourteenth Amendment to the United States Constitution, U.S. Const. amend. XIV, § 1; and Louisiana Constitution Article I, §§ 2, 3, 4-5, and 11, La. Const. Art. I, §§ 2, 3, 4-5, 11.  Taylor's Complaint alleges that on October 13, 2012, three officers[8] with the Baton Rouge Police Department illegally

---

[7] According to Taylor, following the hearing on the instant motion, Defendants returned Taylor's firearms to him, thereby rending moot his request for a court order requiring Defendants to return his firearms.

[8] Taylor alleges that the three arresting officers were Thomas, Wennemann, and Doe.

searched his vehicle, seized three guns that he lawfully possessed, and arrested him for violating § 13:95.3.

Taylor alleges, *inter alia*, that § 13:95.3 unlawfully infringes upon his and other citizens' Second Amendment[9] right to keep and bears arms, made applicable to the State of Louisiana and its political subdivisions by the Fourteenth Amendment. Accordingly, Taylor seeks declaratory and injunctive relief, monetary damages, and attorneys' fees, pursuant to 42 U.S.C. § 1988.

### B.    Procedural History

According to the record, counsel for Defendants signed a Waiver of the Service of Summons on behalf of Defendants on October 22, 2013.  (Doc. 3.)  On October 27, 2013, Taylor filed the executed Waiver of the Service of Summons into the record. (Doc. 3.)  The Waiver signed by counsel for Defendants states,

> I also understand that I, or the entity I represent, must file and serve an answer or a motion under Rule 12 within 60 days from 09/09/2013, the date when this request was sent . . . .  If I fail to do so, a default judgment will be entered against me or the entity I represent.

(Doc. 3.)

Despite executing the waiver, Defendants failed to file an Answer to the Complaint ("Answer") or a motion under Federal Rule of Civil Procedure ("Rule") 12

---

[9] The Second Amendment states, "Right to bear arms.  A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."  U.S. Const. amend. II.  In *District of Columbia v. Heller*, 554 U.S. 570 (2008) the United States Supreme Court made clear that the Second Amendment codified a pre-existing individual right to keep and bear arms. *Id*. at 192-193. In *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), the Court further clarified that "the right to keep and bear arms [is] among those fundamental rights necessary to our system of ordered liberty," and is applied to the states by the Fourteenth Amendment. *Id*.

by November 8, 2013; nor did Defendants request an extension of time to file an Answer or a motion under Rule 12. Indeed, it is uncontested that Defendants did not attempt to file an Answer until approximately five months later.

On April 16, 2014, after several months of inaction by Defendants, Taylor filed a Motion for Preliminary Default. (Doc. 15.) Rule 55(a) requires the Clerk of Court to enter a default against any party that has "failed to plead or otherwise defend . . ." Fed.R.Civ.P. 55(a). Accordingly, on April 16, 2014, the Clerk of Court granted Taylor's motion, and issued an Order of Default against Defendants. (Doc. 17.)

Only *after* the preliminary default was entered against Defendants did Defendants file an Answer. (Doc. 19.) Indeed, the record shows that Defendants did not file an Answer until April 17, 2014, five months and nine days *after* Defendants' November 8, 2013 deadline.[10] (Doc. 19.) To add further insult, Defendants did not request leave of Court to file an out-of-time Answer; nor did Defendants attempt to provide the Court with an explanation for their untimely pleading.

On June 18, 2014, the Court heard oral argument on, *inter alia*, the instant motion. (Doc. 30.) During the hearing, counsel for Defendants failed to establish good cause for Defendants' failure to plead or otherwise defend the instant lawsuit.[11] During

---

[10] Subsequently, Plaintiff filed a motion to strike Defendants' out-of-time Answer. (Doc. 24.) In response, Defendants did not address the untimeliness of their Answer; nor did they cite to any relevant case law to support their opposition. Instead, Defendants submitted what appears to be the standard of review and argument sections from a Rule 12(b) motion to dismiss. (Doc. 25.) During the hearing on the matter, counsel for Defendants failed to establish good cause for Defendants' failure to file a timely Answer. Accordingly, Plaintiff's motion to strike was granted and Defendants' Answer was stricken from the record. (Doc. 30.)

[11] On July 30, 2014, the Court provided counsel for Defendants another opportunity to explain why Defendants failed to plead or otherwise defend the instant lawsuit. (Docs. 31, 66.) Counsels' attempt

4

the hearing, counsel for Defendants also failed to address the factors set out by the United States Court of Appeals for the Fifth Circuit in *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)[12]; nor did counsel for Defendants address the merits of Taylor's claims.[13] Accordingly, the Court deferred its ruling on the motion and granted both parties leave of Court to file post-hearing memoranda addressing the merits of Taylor's claims, specifically, the constitutionality of § 13:95.3. (Doc. 30.)

## II.   Standard of Review

The duty to respond to a complaint is triggered by the service of the summons or lawful process, and the failure to do so may result in the entry of default or default judgment under Rule 55. *Fagan v. Lawrence Nathan Assocs.*, 957 F.Supp.2d 784, 795 (E.D. La. 2013) (citing *Rogers v. Hartford Life & Accident Ins. Co.*, 167 F.3d 933, 937 (5th Cir. 1999)). Rule 55 provides, in pertinent part:

> (a)   Entering a Default.  When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend,

---

to do so was wholly inadequate.  To date, Defendants have failed to provide the Court with an adequate explanation for their failure to plead or otherwise defend the instant lawsuit.

[12] In *Lindsey v. Prive Corp.*, the Fifth Circuit identified the factors a court must consider in deciding whether the entry of default judgment is appropriate. *Id.*, 161 F.3d at 893. Namely: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. The Court notes that Defendants did not address the *Lindsey* factors in their memorandum in opposition. *See* Doc. 28. Instead, Defendants submitted what appears to be the standard of review and argument sections from a Rule 12(b) motion to dismiss. Whether Defendants are entitled to qualified immunity, as urged by Defendants in their memorandum in opposition to the instant motion, is more appropriately argued in a Rule 12 motion, and is irrelevant to the resolution of the instant motion.

[13] The Court notes that Defendants did not file a dispositive motion addressing the constitutionality of § 13:95.3.

and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.

(b)    Entering a Default Judgment.

    (1)    By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due--must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.

    (2)    By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or incompetent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:

        (A)    conduct an accounting;

        (B)    determine the amount of damages;

        (C)    establish the truth of any allegation by evidence; or

        (D)    investigate any other matter.

Fed.R.Civ.P. 55.

Once the Clerk of Court has found a defendant to be in default, the Court may enter a default judgment against the defaulting defendant, upon motion by the plaintiff.[14]  Fed. R. Civ. P. 55(a).  Here, the Clerk of Court has found Defendants in

---

[14] Under the Local Rules of the United States District Court for the Middle District of Louisiana, a judgment of default can be entered no sooner than fourteen days after the Clerk' of Court's entry of

default. (Doc. 17.)  As such, the Court must determine whether entry of a default judgment should follow.

"Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations . . . . [T]hey are 'available only when the adversary process has been halted because of an essentially unresponsive party.'" *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (quoting *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F. 2d 689, 691, 139 U.S. App. D.C. 256 (D.C. Cir. 1970)).  This policy however, is "counterbalanced by considerations of social goals, justice and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers*, 167 F.3d at 936 (internal citations omitted).  In accordance with these guidelines, "[a] party is not entitled to a default judgment as a matter of right, even where the defendant is technically in default." *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996); *see also Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975).

Further, while the Court must accept pleaded facts as true, it retains the obligation to determine whether those facts state a claim upon which relief may be granted. *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

III.   **Analysis**

A.   **Whether Default Judgment Is Appropriate**

In determining whether a default judgment should be entered against a

---

default.  L.R. 55.1.  Here, more than fourteen days have passed since the Clerk of Court found Defendants in default.  (Doc. 17.)

defendant, courts have developed a two-part analysis. *Busi and Stephenson LTD. v. U.S. Trade Finance Corp.*, No. 3:13-CV-3935-B, 2014 U.S. Dist. LEXIS 57730, at \*3 (N.D. Tx. April 25, 2014) (citing cases); *Fidelity & Guaranty Life Insurance Company v. Unknown*, No. 13-CV-412-PRM, 2014 U.S. Dist. LEXIS 71313, at \*5-6 (W.D. Tx. May 16, 2014) (citing cases). First, the court must consider whether the entry of default judgment is appropriate under the circumstances. *See Lindsey*, 161 F.3d at 893. The factors relevant to this inquiry include: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *See Nishimatsu Constr.*, 515 F.2d at 1206.

The Court finds that these six factors weigh in favor of default. First, Defendants' untimely Answer was stricken from the record. Further, Defendants failed to file a motion under Rule 12. Consequently, there are no material facts in dispute.[15] *See Lindsay*, 161 F.3d at 893; *Nishimatsu Constr.*, 515 F.2d at 1206. Second, it is undisputed that more than seven months elapsed between service of the Complaint

---

[15] As noted during the hearing on the instant motion, Defendants failed to file any pleadings that raised genuine disputes as to material facts related to the constitutionality of § 13:95.3. Indeed, Defendants' answer to Taylor's allegation that § 13:95.3 violates the Second Amendment was limited to the words, "denied as written." Further, Defendants failed to file a motion under Rules 12 or 56. Thus, even if Defendants' Answer had not been stricken, the Court would be hard pressed to identify any genuine disputes as to material facts related to the constitutionality of § 13:95.3 that were raised by Defendants.

and Defendants' attempt to file a responsive pleading.  Defendants' "failure to respond

threatens to bring the adversary process to a halt, effectively prejudicing [Taylor's]

interests." *Ins. Co. of W.*, No. C-10-390, 2011 U.S. Dist. LEXIS 114940, at *9 (S.D. Tx.

Oct. 5, 2011) (citing *Lindsay*, 161 F.3d at 893).   Third, the grounds for default

judgment against Defendants are clearly established, as outlined by the Court above.

Fourth, there is no evidence before the Court to indicate that Defendants' failure to file

an Answer by November 8, 2013 was the result of a "good faith mistake or excusable

neglect." *Lindsay*, 161 F.3d at 893.   Indeed, the Court has provided Defendants

multiple opportunities to explain why they failed to file a responsive pleading or

otherwise defend the instant lawsuit.  To date, Defendants have failed to present any

evidence to establish that such failure was due to a good faith mistake or excusable

neglect. Fifth, Defendants' failure to file a responsive pleading or otherwise defend the

instant lawsuit for more than seven months mitigates the harshness of the default

judgment.  Lastly, the Court is not aware of any facts that would give rise to "good

cause" to set aside the default judgment if challenged by Defendants.

### B.   Whether Taylor's Complaint Establishes a Viable Claim for Relief

Due to their default, Defendants are deemed to have admitted the allegations

set forth in the Complaint. *Busi and Stephenson LTD.*, 2014 U.S. Dist. LEXIS 57730,

at *5. Nevertheless, the Court must review the pleadings to determine whether Taylor

has established a viable claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206 (noting

that "default is not treated as an absolute confession by the defendant of his liability

and of the plaintiff's right to recover.").[16]

Taylor's Complaint alleges that on October 13, 2012, at approximately 1:35 a.m., he was pulled over and arrested for, *inter alia*, Possession of a Firearm Where Alcohol Is Being Sold, in violation of §13:95.3.[17]   According to Taylor, Thomas initiated the

---

[16] Taylor's motion and post-hearing memorandum do not address his claims under Section 1983, the Fourth, Fifth, or Fourteenth Amendments, or Sections 2, 4, or 5 of Article I of the Louisiana Constitution. Accordingly, the Court's analysis is limited to the viability of Taylor's Second Amendment claim.  Further, because the Court concludes that Taylor has alleged a viable claim under the Second Amendment, the Court need not analyze the viability of Taylor's claim under Article I, § 11 of the Louisiana Constitution.

[17] Baton Rouge / Parish of East Baton Rouge Code of Ordinances § 13:95.3 states,

(a)     It shall be unlawful for any person to have in his possession a firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, in any premises where alcoholic beverages are sold and/or consumed on the premises except the owner or lessee of the premises, or their employees, sheriffs, deputy sheriffs, state police, city police, constables, town marshals, or persons vested with police power when in the actual discharge of their duties.

(b)     Any sheriff, deputy sheriff, state police, city police, constables, town marshals, or persons vested with police power, may search any person found in any place where alcoholic beverages are sold and/or consumed on the premises, and shall confiscate any firearm or other instrumentality customarily used or intended for probable use as a dangerous weapon which such peace officer may find; this search shall be limited to only weapons, unless there is probable cause for a wider search. Any person who enters a place where alcoholic beverages are sold and/or consumed on the premises does, by the mere fact of entering, consent to a search of his person for any firearm or other instrumentality customarily used or intended for probable use as a dangerous weapon while on said premises, by any sheriff, deputy sheriff, state police, constable, town marshal or persons vested with police power, without a warrant.

(c)     The phrase, "...premises where alcoholic beverages are sold and/or consumed on the premises" shall include all of the licensed premises, including the parking lot.

(d)     Any gun or other instrumentality customarily used or intended for probable use as a dangerous weapon found on any person while on the premises of a place where alcoholic beverages are sold and consumed may be used as evidence in court.

(e)     Whoever commits the crime of possession of a weapon where alcoholic beverages are sold and/or consumed shall be fined not more than five hundred dollars ($500.00) or imprisoned for not more than six (6) months, or both. Additionally,

traffic stop after Taylor pulled out of the Romeo's Lounge parking lot purportedly without his headlights on.[18]  Taylor alleges that at the time of the stop, he informed Thomas that he had two rifles located inside of his car, and that the documents establishing that he possessed the guns legally were located in the glove compartment of his vehicle.  At approximately the same time, Wennemann identified two long barrel guns, a HiPoint 9mm and a Squires Bingham .22 caliber, resting in plain view inside of Taylor's vehicle.  In response, Thomas, without having first placed Taylor under arrest, grabbed Taylor's arm, forced him onto the hood of his police cruiser, and eventually forcibly restrained him in the back of Thomas' police cruiser.[19]

According to Taylor, when he explained to Thomas, Wennemann, and Doe his understanding that he was allowed to carry the guns inside of his vehicle, the officers responded that there was a "new law" that made it illegal for anyone to possess a firearm in the parking lot of an establishment that sold alcohol, and that he was therefore being arrested, and his guns were being seized and taken into police custody. Taylor alleges, however, that only after the officers restrained him in Thomas' police cruiser, and seized and inspected the guns did they place him under arrest.

Taylor alleges that Thomas, Wennemann, and Doe later brought him to East

---

the court may order the forfeiture of the weapon in accordance with law.

B. R. Code § 13:95.3.

[18] Taylor alleges that soon after Thomas initiated the stop, Defendants Wennemann and Doe arrived on the scene and began investigating Taylor's vehicle.

[19] Taylor alleges that he was placed in handcuffs immediately after he exited his vehicle, walked to the rear of his vehicle, and was informed that the officers would conduct a routine check of his vehicle, *but before* he was placed under arrest.

11

Baton Rouge Parish Prison, where he remained until bail was posted on his behalf. Taylor further alleges that, upon searching the trunk of his vehicle, without receiving his permission, the officers also located a third gun, a Yugo 59/66 SKS-type rifle, which they also seized.

Taylor's Complaint alleges that at the time of the traffic stop, he owned and was in lawful possession of the three guns seized by Thomas, Wennemann, and Doe. Taylor further alleges that the guns confiscated by Thomas, Wennemann, and Doe had not been brought into any establishment serving or selling alcohol, and Taylor never entered any establishment that served or sold alcohol with guns in his possession. Nevertheless, all three of his guns were confiscated by Defendants and retained by the Baton Rouge Police Department as evidence of Taylor's violation of §13:95.3. Taylor further alleges that, through the enforcement of §13:95.3, and the prosecution of individuals who are alleged to have violated its provisions, Defendants have created and/or maintained a policy whereby they enjoy unfettered discretion to deprive individuals of their constitutionally protected right to keep and bear arms.

As noted above, Defendants failed to address the constitutionality of §13:95.3, despite having been given the opportunity to do so in response to the Complaint, in the form of a dispositive motion, in their memorandum in opposition to the instant motion, and during the hearing on the instant motion. Accordingly, at the conclusion of the hearing on the instant motion, the Court granted Taylor and Defendants leave to file post-hearing memoranda regarding the constitutionality of §13:95.3. Subsequently, Defendants submitted a post-hearing memorandum in which they make unsupported

factual assertions,[20] and offer a wholly inadequate constitutional analysis.

Defendants do not contest that §13:95.3 falls within the scope of the Second Amendment; nor do Defendants dispute that strict scrutiny applies. *See NRA of Am. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 194 (5th Cir. 2012).[21] Moreover, although Defendants assert that §13:95.3 is "narrowly tailored" to achieve a compelling government interest, they fail to establish such. *District of Columbia v. Heller*, 554 U.S. 570, 688 (2008). Instead, Defendants merely argue that "[t]he City-Parish has a compelling governmental interest in preventing the escalation of arguments brought on by inebriated patrons of" "establishments where alcohol beverages are consumed," without citation to any evidence in the record or binding case law to support this assertion. (Doc. 36, pp. 8.)

Surprisingly, Defendants also concede that subsection (c) of §13:95.3 "may not be as narrowly tailored as it could be" and "could be unconstitutional 'as applied' to a person within the parking lot of a grocery store." (Doc. 36, p. 9.) Accordingly, it cannot be said that Defendants have met their burden of establishing that §13:95.3 is

---

[20] For example, Defendants unequivocally state that there was probable cause for Thomas to stop Taylor's vehicle. However, there has been no finding by this Court that Thomas had probable cause when he stopped Taylor the night of the arrest.

[21] In *NRA of Am.*, the United States Court of Appeals for the Fifth Circuit set out the two-step analysis for evaluating the constitutionality of firearms regulations:

> [T]he first step is to determine whether the challenged law impinges upon a right protected by the Second Amendment - that is, whether the law regulates conduct that falls within the scope of the Second Amendment's guarantee; the second step is to determine whether to apply intermediate or strict scrutiny to the law, and then to determine whether the law survives the proper level of scrutiny.

*Id.*, 700 F.3d at 194.

narrowly tailored to achieve a compelling government interest.[22]

In contrast, Taylor's pleadings establish a viable claim for relief under the Second Amendment. As written, the clear language of §13:95.3 prohibits the possession of firearms in any parking lot of an establishment that sells alcohol. Thus, any law abiding citizen who exercises his or her right to keep or bear arms within the confines of his or her personal vehicle will violate §13:95.3 anytime he or she, for example, stops to refuel a vehicle at a service station that sells alcohol, or stops to purchase groceries at a grocery store that sells alcohol. Indeed, Defendants concede in their memorandum that §13:95.3 "could be unconstitutional 'as applied' to a person within the parking lot of a grocery store." (Doc. 36, p. 9.) Similarly, the ordinance prohibits law-abiding citizens from purchasing and possessing firearms at any establishment that sells alcohol, thereby rendering the sale of firearms at establishments like Wal-Mart a criminal act.[23] Indeed, even Defendants concede that §13:95.3 impinges upon a right protected by the Second Amendment.

The viability of Taylor's Second Amendment claim is further underscored by undisputed evidence that members of the East Baton Rouge Parish Attorney's Office, including Defendant Roper, appeared before the Baton Rouge Metropolitan Council on June 25, 2014, and requested the Council repeal §13:95.3 because the ordinance is a ". . . mistake, and it should be corrected." (Docs. 44, pp. 14-17, 44-5.) It is also

---

[22] Further, even if the Court were to conclude that intermediate review is appropriate, Defendants have failed to present any argument, let alone establish, that §13:95.3 is "reasonably adapted to a substantial governmental interest." *NRA of Am.*, 700 F.3d at 195.

[23] §13:95.3 contains no exception for merchants who sell both firearms and alcoholic beverages.

undisputed that on June 24, 2014, counsel with the East Baton Rouge Parish Attorney's Office drafted (and forwarded to counsel for Taylor) an email to Baton Rouge Chief of Police, Carl Dabadie, Jr., suggesting Dabadie "no longer enforce Section 13:95:3" because "[t]he ordinance may have some constitutional problems." (Doc. 50-6.)

In sum, the Court finds that Taylor's allegations, which the Court accepts as true based on Defendants' default, are sufficient to establish a viable claim for relief under the Second Amendment.  Consequently, the Court concludes that Plaintiff has established a sufficient basis for judgment in his favor.

## C.    Whether Declaratory Relief is Appropriate[24]

"When considering a declaratory judgment action, a district court must engage in a three-step inquiry.  First, the court must determine whether the declaratory action is justiciable." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). In other words, the Court must be satisfied that an "actual controversy" exists between the parties to the action. *Id.* (citation omitted). "Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented." *Id.* (citation omitted). "Third, the court has to determine how to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citation omitted).

### 1.    Whether Taylor's Lawsuit Is Justiciable

"A declaratory judgment action is ripe for adjudication only where an 'actual

---

[24] The Court notes that Defendants failed to address, let alone oppose, Taylor's request for a declaratory judgment.

controversy' exists." *Id.* at 896 (citations omitted). "As a general rule, an actual controversy exists where 'a substantial controversy of sufficient immediacy and reality' [exists] between parties having adverse legal interests." *Id.* (citations omitted). Simply put, "in order to achieve the status of a case or controversy, a dispute must exist between two parties having adverse legal interests." *Fid. & Guar. Life Ins. Co. v. Unknown*, No. 13-CV-412-PRM, 2014 U.S. Dist. LEXIS 71313, at *10 (W.D. Tex. May 16, 2014) (citing *S. Jackson & Son, Inc. v. Coffee, Sugar, & Cocoa Exchange, Inc.*, 24 F.3d 427, 431 (2d Cir.1994) (citation omitted)). "Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis." *Orix Credit Alliance*, 212 F.3d at 896 (citations omitted).

Here, it is undisputed that §13:95.3 remains the law in the Parish of East Baton Rouge and the City of Baton Rouge, and continues to be enforced by the Baton Rouge Police Department. Accordingly, any individual who chooses to keep his or her lawfully-held firearms in his vehicle while "in any premises where alcoholic beverages are sold and/or consumed on the premises," including a grocery store parking lot, is subject to arrest by the Baton Rouge Police Department.

Further, it is undisputed that Taylor was arrested for violating §13:95.3; and that he, or any other individual, can be arrested for violating §13:95.3, imprisoned for up to six months, and/or ordered to pay a five hundred dollar fine, and ordered to forfeit his or her firearms *at any time*. In other words, there exists a real, immediate, and direct threat to Taylor's Second Amendment rights. Additionally, Defendants do not

16

argue that this Court lacks jurisdiction or that the constitutionality of §13:95.3 is not ripe for determination.

For these reasons, the Court concludes that there is a "substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

### 2.    Whether the Court Has the Requisite Authority

"Under the second element of the *Orix Credit Alliance* test, a district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in federal court; and (3) the district court is prohibited from enjoining the state proceedings under [28 U.S.C. § ] 2283." *Sherwin-Williams Co. v. Holmes Cty.*, 343 F.3d 383, 388 n. 1 (5th Cir. 2003) (citations omitted).

Here, nothing before the Court establishes the existence of a similar, parallel state court action relating to this cause.   Further, according to Defendants, the criminal charges against Taylor were dismissed on April 28, 2014.  Absent evidence of a similar pending state court action, the Court has the authority to grant declaratory relief pursuant to the guidelines set forth in *Orix Credit Alliance*.

### 3.    Whether the Court Should Issue Declaratory Relief

Pursuant to the third step set forth in *Orix Credit Alliance*, a district court faced with a declaratory relief action must determine whether to exercise or decline jurisdiction.  The Fifth Circuit has stated that, when determining whether to exercise or decline jurisdiction over a declaratory judgment action, a district court should

17

consider several important factors, namely: (1) whether a state action is pending in which all of the matters in controversy may be fully litigated; (2) whether the plaintiff filed the declaratory action suit in anticipation of a suit by the defendant; (3) whether the plaintiff engaged in forum shopping in bringing the suit; (4) whether possible inequities exist by allowing the declaratory plaintiff to gain precedence in time or to change forums; (5) whether the federal court is convenient for the parties and witnesses; (6) whether retaining the case in federal court will serve judicial economy; and (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending. *Sherwin-Williams*, 343 F.3d at 388 (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)).

The Court concludes that the above listed factors balance in favor of resolving Taylor's request for declaratory relief. As noted above, the Court has no evidence before it demonstrating the existence of a parallel state court action. Additionally, for the reasons noted the above, the Court concludes that default judgment is warranted in this matter. Further, a declaratory judgment as to the constitutionality of §13:95.3 would further judicial efficiency.

## IV. Conclusion

Based on the above analysis, the Court concludes that Taylor is entitled to a default judgment against Defendants. Additionally, due to the actual controversy and constitutional deprivations involved, the Court concludes that a declaratory judgment

and permanent injunction are warranted.[25]

Accordingly,

**IT IS ORDERED** that Plaintiff Ernest Taylor's **Motion for Default Judgment (Doc. 26)** is **GRANTED**.

The Court **DECLARES** that City of Baton Rouge, Louisiana and East Baton Rouge Parish, Louisiana Code of Ordinances § 13:95.3 unlawfully infringes upon the right of Plaintiff and other citizens to keep and bear firearms, in violation of the Second Amendment.

**IT IS FURTHER ORDERED** that Defendants the City of Baton Rouge, Carl Dabadie, Jr., Mary Roper, Lisa Freeman, Patrick Wennemann, James Thomas, and Jane Doe are **PERMANENTLY ENJOINED** from enforcing Baton Rouge / Parish of East Baton Rouge Code of Ordinances § 13:95.3.

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 56(b)(2), a **HEARING** shall be held on <u>October 23, 2014 at 10:00 a.m.</u> in Courtroom 2 to determine the amount of monetary damages due to Plaintiff Ernest Taylor.  Taylor shall submit his pre-hearing memorandum <u>no later than September 23, 2014</u>. Defendants shall submit their memorandum in opposition, if any, <u>no later than October 7, 2014</u>.

**IT IS FURTHER ORDERED** that **Plaintiffs' Motion for Temporary**

---

[25] The Court notes that Defendants failed to address, let alone oppose, Taylor's request for an order permanently enjoining the City of Baton Rouge from enforcing § 13:95.3.

19

Restraining Order and for Preliminary Injunction (Doc. 61)[26] is **DENIED AS MOOT**.

Final judgment shall issue by separate order.

Baton Rouge, Louisiana, this _25th_ day of August, 2014.

**BRIAN A. JACKSON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

[26] The Court notes that Defendants failed to file a memorandum in opposition to Taylor's motion for a temporary restraining order and preliminary injunction.