IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| ERNEST TAYLOR | § | CIVIL ACTION |
|---|---|---|
| Plaintiff, | § | |
| VS. | § | |
| THE CITY OF BATON ROUGE, ET AL. | § | NO. 13-579-BAJ-RLB |
| Defendants. | § | |

**PLAINTIFF'S PRE-HEARING MEMORANDUM
REGARDING DETERMINATION OF MONETARY DAMAGES**

**I.   Introduction**

On August 25, 2014, the Court issued a Ruling and Order entering a default judgment in favor of Plaintiff, Ernest Taylor, on his Second Amendment claims against Defendants, the City of Baton Rouge, and certain of its individual actors. [Doc. 69]. The Court also scheduled a hearing to determine the amount of damages to which Plaintiff was entitled under these claims, and imposed deadlines for the submission of pre-hearing memoranda by the parties. *Id.*

Given the peculiar procedural status of this case, where default judgment has been entered with respect to only a portion of Plaintiff's claims, the manner by which the amount of Plaintiff's monetary damages should be determined is less than clear. As set forth below, while certain amounts of Plaintiff's monetary damages can be readily be attributed entirely to Plaintiff's Second Amendment claims, the same is not true with respect to all of the damages sought by Plaintiff. Of particular concern are those elements of Plaintiff's damages that encompass Plaintiff's Second Amendment claims in addition to other claims for which default judgment has not been entered. Specifically, Plaintiff perceives no ready means by which to

1

apportion the amount of general damages, punitive damages, or attorney's fees to which Plaintiff is entitled between his Second Amendment claims, and those claims upon which judgment has not yet issued. A more thorough discussion of the types of monetary damages to which Plaintiff asserts his entitlement, and the particular issues implicated by those claims, appears below.

## II.     Procedural History

Plaintiff instituted this action on September 3, 2013, asserting claims pursuant to 42 U.S.C. §1983, the Second, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, and various provisions of Louisiana law. [Doc. 1]. Through his complaint. Plaintiff sought declaratory and injunctive relief in addition to monetary damages (including punitive damages and attorney's fees) as a result of his arrest, detention, and the confiscation of his firearms by officers of the Baton Rouge Police Department on October 13, 2012. [Doc. 1]. Defendants failed to answer Plaintiff's Complaint, and on April 16, 2014, the Clerk issued an order placing Defendants in default. [Doc. 17].

Plaintiff subsequently moved for the entry of default judgment on his Second Amendment claims for injunctive and declaratory relief, and requested the Court to schedule a hearing with respect to the issue of monetary damages. *See* [Doc. 26]. In connection with seeking this relief, Plaintiff also proposed that a conference between the parties and the Court would likely be beneficial to address procedural issues in the event the court scheduled the hearing Plaintiff had requested. *See* [Doc. 26-1] at 24. The Court granted Plaintiff's motion, entered default judgment with respect to his claims for injunctive and declaratory relief arising under the Second Amendment to the U.S. Constitution, and set a hearing to determine the amount of monetary damages to which Plaintiff is entitled pursuant to his Second Amendment

claims.[1]  [Doc. 69].  The Court's Order granting default judgment expressly excluded the other claims appearing in Plaintiff's complaint from its entry of default judgment.  *See id.* at 10, n.16.

On September 11, 2014, Defendants filed a Motion for Leave requesting permission to submit a motion to set aside the Clerk's default on those claims for which judgment had not yet been entered.  [Doc. 74].  The following day, Plaintiff filed a motion requesting a status conference in order to address issues surrounding the Court's scheduled hearing, the other unresolved claims appearing in Plaintiff's operative complaint, and additional claims Plaintiff intends to bring as a result of events occurring after the filing of Plaintiff's complaint.  [Doc. 75]. Defendants thereafter filed a motion seeking to join in the request for a status conference.  [Doc. 78].  Prior to the deadline for filing Plaintiff's pre-hearing memorandum, the parties jointly moved the court to continue the hearing on Plaintiff's monetary damages, and to also suspend the briefing deadlines set in connection with the hearing.  [Doc. 79].  After considering the parties' motion, the Court declined to suspend the briefing deadlines, but indicated it would take the request to continue the hearing under advisement.  [Doc. 80].

### III.  Evidence Anticipated at the Hearing

At the hearing, Plaintiff will establish that he was deprived of his lawfully-held firearms in violation of his Second Amendment rights for approximately 619 days.  It is anticipated that testimony will be offered that during this time, Plaintiff suffered from worry, anxiety and mental stress over the inability to defend himself in his home or his vehicle, which caused a loss of sleep and enjoyment of life.  Testimony will also be offered that Plaintiff altered his lifestyle as a result of being deprived of his firearms, in that he no longer participated in activities he had previously

---

[1] The Court scheduled this hearing for October 23, 2014, and set September 23, 2014 as the deadline for the submission of Plaintiff's pre-hearing memorandum

enjoyed for fear of finding himself defenseless in a dangerous situation, or being accosted by police personnel without justification. It will also be established that Plaintiff was required to defend the criminal charges lodged against him in Baton Rouge City Court in order to regain possession of his firearms. Evidence will be offered to show that Plaintiff was required to retain the assistance of counsel to defend against these charges, and that he was required to appear in Baton Rouge City Court on multiple occasions in connection with his defense, requiring him to be absent from his employment. Evidence will also establish that at the time they were seized, Plaintiff's firearms were loaded with ammunition, but that the ammunition was not returned along with the firearms, and that Plaintiff had the firearms inspected by a professional to ensure they remained in operating condition upon their return.

IV.  **Argument**

The federal courts' power to grant relief not expressly authorized by Congress is firmly established. *Bush v. Lucas,* 462 U.S. 367, 374 (1983). It is within the jurisdiction of federal courts to decide all cases "[arising] under the Constitution, laws, or treaties of the United States." *Id.,* citing 28 U.S.C. §1331. This jurisdictional grant provides not only the authority to decide whether a cause of action is stated by a plaintiff's claim that he has been injured by a violation of the Constitution., but also the authority to choose among available judicial remedies in order to vindicate constitutional rights. *Id.,* citing *Bell v. Hood,* 327 U.S. 678, 684 (1946). While the U.S. Supreme Court has fashioned a wide variety of nonstatutory remedies for violations of the Constitution by federal and state officials, damages have historically been regarded as the ordinary remedy for an invasion of personal interests in liberty. *Id.* at 374-375 (citations omitted). Even where the Constitutional provision at issue does not provide for its enforcement

4

by an award of money damages in cases of violation, "it is … well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Id.* at 375, quoting *Bell,* 327 U.S. at 684. In other words, "[t]he federal courts' statutory jurisdiction to decide federal questions confers adequate power to award damages to the victim of a constitutional violation." *Id.* at 378. Thus, it is clear that the Court is authorized to award monetary damages to Plaintiff for Defendants' violation of his rights under the Second Amendment.

      A.      **Monetary Damages Arising Solely from Plaintiff's Second Amendment Claims**

The Second Amendment to the U.S. Constitution codified the pre-existing right of American citizens "to keep and bear arms." *See* [Doc. 69] at 3, n.9, citing *District Columbia v. Heller,* 554 U.S. 570 (2008). Thus, as Plaintiff understands the Order issued by the Court, the purpose of the currently scheduled hearing is to determine the amount of damages attributable to Defendants' deprivation of Plaintiff's firearms from the time of his arrest on October 13, 2012, until his firearms were returned on June 23, 2014. *See* [Doc. 36-6]. Such a claim would be akin to a claim for conversion of Plaintiff's property under Louisiana law.

> The Louisiana Supreme Court has explained the tort of conversion as follows:
>
> [t]he essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner, although a temporary deprivation will be sufficient; and in consequence it is of no importance what subsequent application was made of the converted property, or that defendant derived no benefit from his act.
>
> In order to constitute a conversion there must be either some repudiation of the owner's right, or some exercise of dominion over it inconsistent with such right, as otherwise expressed, there must be a wrongful taking or a wrongful detention, or an illegal assumption of ownership, or an illegal user or misuser.

*Importsales, Inc. v. Lindeman,* 231 La. 663, 668 (La. 1957). The tort of conversion under

Louisiana law is different from conversion under common law in that it does not require a showing of an intentional wrong giving rise to strict liability. *Dixie S&L Ass'n v. Pitre,* 751 So.2d 911, 921 (La. App. 5 Cir. 1999), citing *Dual Drilling Co. v. Mills Equipment,* 721 So.2d 853, 857 (La. 1998).

The traditional damages for conversion consist of the return of the property itself, or the value of the property at the time of the conversion. *See Boisdore v. International City Bank & Trust Co.,* 361 So.2d 925, 931 (La. App. 4 Cir. 1978) (citations omitted). A party may also claim as damages a sum for loss of the use of the property of which he was deprived. *See e.g., Navratil v. Smart,* 400 So.2d 268 (La. App. 1 Cir. 1981); *Chapman v. Steckler,* 442 So.2d 909 (La. App. 3 Cir. 1983). In addition, general damages for injuries such as mental anguish, humiliation and embarrassment are also proper items for recovery for tortious conversion. *Boisdore,* 361 So.2d at 932 (collecting cases). The mere fact that plaintiff was wrongfully deprived of his property necessarily means that some mental anguish and humiliation and embarrassment resulted. *Id.;* citing *Bostwick v. Avis Rent-a-Car,* 215 So.2d 854 (La. App. 1 Cir. 1968); *Steadman v. Action Finance Corporation,* 197 So.2d 424 (La. App. 2 Cir. 1967); *see also, Gore v. Turner,* 563 F.2d 159,164 (5th Cir. 1977) ("[i]t was recognized as long ago as 1919 that damage could be presumed from the denial of constitutional right"); *Memphis Cmty. Sch. Dist. v. Stachura,* 477 U.S. 299, 311 ("presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure").

Given the above, Plaintiff anticipates being able to establish claims to the following items of damage <u>solely</u> as a result of Defendants' violation of his Second Amendment rights:

- Value of the ammunition which Defendants converted but did not return

This amount can be determined through Plaintiff's testimony regarding the amount and types of ammunition confiscated, and by resort to outside sources for the determination of their fair market value.

- The amount to which Plaintiff is entitled for the loss of use of his firearms for a period lasting approximately 619 days.

This element of damages cannot be determined with exactitude, and there is little guidance from the courts on how to value such claims. Given the limited jurisprudence available, its age, and the fact that the conversion deprived Plaintiff of the ability to defend himself in his home or vehicle, Plaintiff believes this portion of his claim should be valued somewhere between $50 and $100 for each day he was deprived of his weapons. *See Navratil v. Smart,* 400 So.2d 268 (La. App. 1 Cir. 1981), *cert. denied,* 405 So.2d 320 (1981) ($1,500 loss of use damages awarded for conversion of vehicle for ~3 months); *Chapman v. Steckler,* 442 So.2d 909 (La. App. 3 Cir. 1983) ($1,500 loss of use damages awarded for conversion of airplane for 40 days).

- The amount of general damages Plaintiff experienced solely as a result of the conversion of his firearms.

This element of damages also cannot be determined with exactitude and, as explained below presents the additional difficult task of separating those items of general damages attributable to Defendant's violation of Plaintiff's Second Amendment rights from those attributable to other violations of his rights. Still, there exists ample case law providing guidance with respect to the value of such damages solely in the context of a conversion claim. *See Hebert v. First Guar. Bank,* 493 So.2d 150 (La. App. 1 Cir. 1986) ($15,000 general damage award for conversion of vehicle); *Knight v. First Guar. Bank,* 577 So.2d 263 (La. App. 1 Cir. 1991) ($30,000 general damage award for conversion of funds on deposit with bank); *TYCO Ventures, L.L.C. v. Wiggins,*

32 So.3d 1168 (La. App. 3 Cir. 2010) ($30,000 general damage award for conversion of tractor lasting ~3 weeks); *Cluse v. H & E Equip Servs.,* 34 So.3d 959 (La. App. 3 Cir. 2010) ($40,000 general damage award for conversion of tractor), citing *Gulf Rice Milling v. Sonnier,* 930 So.2d 256 (La. App. 3 Cir. 2006), *writ denied* 939 So.2d 1282 (La. 2006) ($100,000 general damage award for conversion of rice and money).

### B. Monetary Damages Not Attributable to Plaintiff's Second Amendment Claims

As noted above, many of Plaintiff's claims are based upon violations of provisions of applicable law other than the second amendment. Included among these would be Plaintiff's claims for false arrest, false imprisonment, malicious prosecution, and battery/excessive force in violation of Plaintiff's rights under, *inter alia,* the Fourth and Fourteenth Amendments to the U.S. Constitution. These claims also have substantial value and would remain unresolved at the conclusion of the currently scheduled hearing. *See e.g., Vidrine v. U.S.,* 846 F.Supp.2d 550 (W.D. La. 2011) ($400,000.00 general damage award - wrongful prosecution only); *Grosch v. Tunica County,* 2009 U.S. Dist. LEXIS 4966 (N.D. Miss. 2009) ($125,000.00 compensatory damages; $600,500.00 punitive damages - false arrest, malicious prosecution, unreasonable search and seizure); *Bender v. City of New York,* 78 F.3d 787 (2nd Cir. 1996) ($150,700.00 compensatory damages – false Arrest, malicious prosecution, battery); *Young v. City of Little Rock,* 249 F.3d 730 (8th Cir. 2001) ($100,000.00 compensatory damages – unreasonable detention subsequent to valid arrest); *Edman v. Marano,* 177 Fed. Appx. 884 (11th Cir. 2006) ($225,000.00 compensatory damages – false arrest only); *Ortego v. Landry,* 746 So.2d 613 (La. App. 3 Cir. 1999) ($50,000.00 general damages; $200,000.00 punitive damages – false imprisonment, intentional tort, malicious prosecution); *Dumas v. City of New Orleans,* 803 So.2d

8

1001 (La. App. 4 Cir. 2001) ($100,000.00 general damages – False Arrest only); *Patton v. Self,* 952 So.2d 874 (La. App. 3 Cir. 2007) ($20,000.00 - excessive force only).

### C. Monetary Damages Partially Arising from Plaintiff's Second Amendment Claims

Finally, certain items of Plaintiff's monetary damages present distinct problems in determining the amount that is attributable to Plaintiff's Second Amendment claims, as opposed to those claims which remain for resolution. As stated above, while unwieldy, it may be possible to parse out those general damages that are solely the result of Defendants' violations of Plaintiff's Second Amendment rights from those sustained from violations of other provisions of law. Making separate determinations of the same type of damages resulting from differing claims in the context of the same events would, however, increase the complexity of an analysis the courts have repeatedly indicated is subject to uncertainty and inexactitude.

Similarly, determining the amount of attorney's fees to which Plaintiff may be entitled solely with respect to his Second Amendment claims would require analyzing the legal services provided to determine the claims for which the fees were incurred. While it is anticipated that the issue of attorney's fees will be addressed after the October 23rd hearing,[2] it nonetheless requires classification of these fees as relating to certain claims, when in actuality all of Plaintiff's claims are hopelessly intertwined. With respect to the amount of punitive damages to which Plaintiff is entitled, Plaintiff respectfully asserts that this determination should also be made concurrently with the determination of the amount of punitive damages due as a result of plaintiffs other claims.

---

[2] *See Gore v. Turner,* 563 F.2d 159 (5th Cir. 1977) (stating general practice is to determine amount of attorney's fees after trial).

V. **Conclusion**

For the reasons appearing above, Plaintiff respectfully requests that the Court set a status conference prior to the October 23rd hearing to discuss the issues identified herein.

Respectfully submitted,

s/ Terrence J. Donahue, Jr.
Christopher D. Glisson #20200
Terrence J. Donahue, Jr. #32126
**MCGLYNN, GLISSON, & MOUTON**
340 Florida Street
Baton Rouge, Louisiana 70801
(225) 344-3555

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice has been served on all counsel of record through a Notice of Electronic Filing generated by the Court's CM/ECF system, including those listed below, on this, the 23rd day of September, 2014.

Tedrick Knightshead
Gwendolyn K. Brown
Office of the Parish Attorney
East Baton Rouge Parish
222 Saint Louis Street, Room 902
Baton Rouge, LA 70821

s/ Terrence J. Donahue, Jr.
Terrence J. Donahue, Jr.